Rel: March 13, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0172

_____

## Ex parte Mason John Grimes

## PETITION FOR WRIT OF HABEAS CORPUS

## (In re: State of Alabama

## v.

## Mason John Grimes)

## (Blount Circuit Court: CC-24-208)

_____

### SC-2025-0279

_____

**Ex parte Brooklyn Paige Grimes**

**PETITION FOR WRIT OF HABEAS CORPUS**

**(In re: State of Alabama**

**v.**

**Brooklyn Paige Grimes)**

**(Blount Circuit Court: CC-24-207)**

McCOOL, Justice.

Mason John Grimes and Brooklyn Paige Grimes ("the petitioners") have each filed a petition for a writ of habeas corpus, arguing that the Blount Circuit Court ("the circuit court") erred by denying them bail while they each await trial on a charge of capital murder. See § 13A-5-40, Ala. Code 1975. For the reasons set forth herein, we deny the petitions.

Facts and Procedural History

The petitioners were denied bail following evidentiary hearings and are currently awaiting trial. Because the petitioners have yet to face trial, we will not provide a detailed discussion of the evidence that was presented in the bail hearings, and we do not find such a discussion to be

necessary. See Wilbanks v. State, 40 Ala. App. 682, 683, 122 So. 2d 559, 560 (1960) ("Where (as here) a trial before a petit jury is pending, it has been our practice not to discuss the tendencies of the evidence on the proceeding for bail."). Rather, it is sufficient to set forth only the following undisputed facts: that the petitioners are a married couple who have served as foster parents on various occasions; that, in 2022, the Marshall County Department of Human Resources ("DHR") obtained custody of E.E., an infant, because his parents "couldn't care for him and he was fail[ing] to thrive"; that, at that time, E.E. suffered from various health issues, which required, among other treatments, a feeding tube and frequent hospitalization; that, in August 2022, DHR placed E.E. in the petitioners' custody when he was approximately three months old; and that E.E. died in November 2023 while still in the petitioners' custody.

In July 2024, a Blount County grand jury indicted the petitioners for capital murder, alleging that they had intentionally caused the death of E.E., who was less than 14 years of age at the time of his death.[1] See

---

[1]The indictments also include charges of intentional murder, see § 13A-6-2(a)(1), Ala. Code 1975; felony murder, see § 13A-6-2(a)(3), Ala. Code 1975; and aggravated child abuse, see § 26-15-3.1, Ala. Code 1975.

§ 13A-5-40(a)(15). The petitioners each filed a motion requesting bail, which the State of Alabama ("the State") opposed, and the circuit court held back-to-back hearings on the motions on the same day in December 2024. At the beginning of the first hearing, the circuit court told defense counsel: "[I]t's your motion, so you may proceed." Defense counsel argued, however, that "the State has to produce the evidence to convince the court that the defendant is not entitled to a bond. This is not the defense's burden." The State argued in response that, "if a defendant has been indicted for a capital offense, the defendant is presumed guilty for purposes of setting bail" and that, as a result, "the defendant has the burden to overcome the presumption before he or she is entitled to bail." According to the State, its argument was supported by "caselaw that is very clear." Defense counsel countered with the argument that § 15-13-3(a), Ala. Code 1975 -- the statute that governs bail in capital cases -- "does not say anything about a presumption" and, instead, provides that a trial court may deny bail only if the court is "[of] the opinion o[n] the evidence adduced that [the defendant] is guilty of the offense." Defense counsel then pointed out that "[t]here ha[d] been no evidence presented to the court," at which point the following colloquy occurred:

4

"[THE STATE]: But in this case, the indictment comes before the court of [sic] potential evidence where the State would say, 'Here is our indictment. [The defendants] have been indicted on a capital offense.' ... At that point, if they want to attempt to rebut that and try to show the opposite, then here it is. If they don't put anything else on, all the court has before it is the indictment and the court relies on the indictment in setting the bond. So that's where we are. We come into this court with an indictment. ... At this point, if the defense would like to put on any evidence to say 'there is not enough evidence,' then that's where we are at this point.

"[DEFENSE COUNSEL]: ... [T]he indictment means there is probable cause and that is not the standard for denying bond. If the court is of the opinion that the defendant is guilty; that is different from probable cause. If it was just probable cause, the statute would say so.

"[THE STATE]: That's how you get the indictment. As the indictment comes in here, [the court] can read that and rely on it, and if there is no rebuttal, the only thing before [the court] is that [the defendant] did do these things. Therefore, that would be guilt to the offense if there is no rebut.

"....

"[DEFENSE COUNSEL]: I just ask that [the court] look at the statute that says you have to be of the opinion that the defendant is guilty -- not probably is guilty.

"[THE STATE]: The thing is if you have in front of you the indictment and there is nothing to rebut that, then the indictment is that [the defendant] is guilty of the offense. That would be the opinion if there is nothing else out there. [There is] specific caselaw to support that.

"....

5

"THE COURT: [Section] 15-13-3(a) [states], 'A defendant is not eligible for bail when he or she is charged with capital murder pursuant to [Section] 13A-5-40 if the court is of the opinion on the evidence adduced that he or she is guilty of the offense.' Then they are not eligible. So [the State's] evidence is the indictment.

"[DEFENSE COUNSEL]: Which establishes probable cause.

"[THE STATE]: There are cases where you can rely just on the indictment.

"THE COURT: So if [the State] get[s] up and say[s], 'Here is our evidence -- this indictment,' then it's your turn.

"[DEFENSE COUNSEL]: No, they have established probable cause with the indictment.

"THE COURT: 'If the court is of the opinion from the evidence adduced,' that is probable cause. You are up.

"[DEFENSE COUNSEL]: So the court is convinced that the defendant[s] [are] guilty at this point?

"THE COURT: A grand jury has returned an indictment. I'm saying based on that, I'm going to hold no bond unless I hear evidence from the defendant[s] otherwise. That is the ruling."

Defense counsel then proceeded to present evidence that, according to the petitioners, demonstrates that they are not guilty of capital murder. Following the hearings, the circuit court issued identical orders

6

in which it denied the petitioners' requests for bail. Those orders state,

in relevant part:

> "The Code of Alabama § 15-13-3(a) (1975) states as follows:
>
>> "'A defendant is not eligible for bail when he or she is charged with capital murder pursuant to Section 13A-5-40, if the court is of the opinion, on the evidence adduced, that he or she is guilty of the offense.'
>>
>> "....
>
> "In this case there is no question about the charge to which the defendant has been indicted. While the Alabama Legislature has given very sparse guidance relating to 15-13-3[,] the appellate courts have directly addressed the issue in a long line of cases dating back to the 1940s.
>
>> "'"Where one is imprisoned [for a capital offense] by virtue of an indictment he is presumed to be guilty in the highest degree, and to be entitled to bail as of right, must overcome this presumption by proof." Livingston v. State, 40 Ala. App. 376, 377, 116 So. 2d 396, 397 (1959).'
>
> "There is a presumption of guilt when charged by an indictment as it relates to bail. The presumption of innocence most certainly applies to the ultimate issue of guilt or innocence[;] the presumption here is only as to the issue of bond. The defendant has argued that the State has the burden … as it pertains to bond. The prevailing case law does not support such a position.
>
>> "'"Where one is imprisoned by virtue of an indictment he is presumed to be guilty in the highest degree, and to be entitled to bail as a right,

7

must overcome this presumption by proof." Ex parte Landers, 690 So. 2d 537, 538 (Ala. Crim. App. 1997), quoting Livingston v. State, 40 Ala. App. 376, 377, 116 So. 2d 396, 397 (1959). See Ex parte Patel, 879 So. 2d 532 (Ala. 2003).'

"'"It is well established that a person accused by indictment of a capital offense must overcome the presumption of his guilt by proof, in order to be entitled to bail." Ex parte Hall, 844 So. 2d 571 (Ala. 2002).'

"The question before the court as it relates to the presumption is not one of 'will' the defendant be convicted but 'could' the defendant be convicted. And if a jury did reach a verdict of guilty could that verdict be maintained based on the evidence presented. If the answer to the foregoing question is YES then the defendant is not entitled to bond[;] if the answer is NO then bond should be granted.

"'A safe rule for a trial court to follow "is to deny bail if the court could sustain a capital conviction by a jury based on the same evidence taken at the hearing seeking bail; and to allow bail if the evidence is not so efficacious." Webb v. State, 35 Ala. App. 575, 576, 50 So. 2d 451, 452 (1951); Roddam v. State, 33 Ala. App. 356, 33 So. 2d 384 (1948).'

"In this case it is clear the defendant has the burden to overcome the presumption for purposes of establishing bond because [he/]she is charged by way of an indictment for an offense covered by 15-13-3(a). Based on the evidence presented in the hearing the court is of the opinion that conviction by a jury could be sustained and the presumption has not been overcome. Therefore, the defendant's request for bail is hereby DENIED. Defendant shall remain in custody pending further disposition of this matter."

(Capitalization in original; emphasis omitted.) The petitioners then sought habeas relief in the Court of Criminal Appeals, which denied their petitions by order, and have now sought habeas relief in this Court.

Analysis

The petitioners have filed separate petitions with this Court, but they make the same arguments in what are virtually identical petitions.[2] First, the petitioners argue that "the notion that a capital murder indictment creates a presumption of guilt that a defendant must overcome to obtain bond is completely unsound when traced to its origins." Petitions, p. 17. More specifically, the petitioners argue that this principle, which we will hereinafter refer to as "the presumption rule," originated in caselaw that is incompatible with the Alabama Constitution and Alabama's statutory law. Thus, according to the petitioners, "this line of caselaw cannot stand." Id., p. 18. Alternatively, the petitioners argue that, even if this Court leaves the presumption rule in place, the evidence they presented in the bail hearings overcame the

_____

[2]The petitioners were not represented by the same counsel in the circuit court and do not have the same counsel of record in this Court. However, during oral arguments before this Court, only Mason John Grimes's counsel argued on behalf of the petitioners.

9

presumption of guilt stemming from their indictments and that they are therefore entitled to reasonable bail. Because the petitioners argue that the presumption rule "is completely unsound when traced to its origins," id., p. 17, we begin our analysis by reviewing the history of the rule.

I. The History of the Presumption Rule

In the Alabama Constitution of 1819 -- our original constitution -- Article I, Section 17 ("Section 17"), provided that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident, or the presumption great." In the first version of the Alabama Code, published in 1852, § 3669 provided, in pertinent part, that a defendant "cannot be admitted to bail in cases … [w]hich are or may be punishable with death, where the court or magistrate is of opinion, on the evidence, that the defendant is guilty of the offence, in the degree punished capitally." Thus, in our state's infancy, neither our constitution nor our statutory law provided that an indictment for a capital offense creates a presumption of guilt that, if not overcome by the defendant, justifies the denial of bail. Rather, § 3669 expressly provided that the denial of bail in a capital case had to be based "on the evidence," and, although Section 17 provided that the denial of

10

bail could be based on a "great" "presumption" of guilt, early caselaw explained that this presumption had to come from evidence presented to the trial court, not from an indictment.

In Ex parte Bryant, 34 Ala. 270 (1859), this Court began its analysis by reviewing the common-law rules governing bail in capital cases, which the Court summarized as follows:

> "[I]t [is] a rule of the common law, that before indictment found, a defendant charged with murder will be admitted to bail, whenever, upon examination of the testimony under which he is held, the presumption of guilt is not strong; while, on the other hand, bail is always refused after an indictment for murder has been found by a grand jury."

Id. at 274. The reason that bail was always denied under the common law in a postindictment case, the Court explained, was because,

> "after an indictment for an offense punishable capitally, the court cannot inquire into the merits, for the reason that the evidence on which the indictment was found is not in writing, and, if it were, could not be disclosed; and the court, having no means of ascertaining otherwise, will, therefore, always imply that the grand jury has not indicted on insufficient proof, and so refuse to bail."

Id. at 275.

The Court then went on to explain, though, that

> "the rules of the common law … have been, in effect, abolished by the provisions of our constitution and statutes in relation to bail in criminal cases. The 17th section of our bill of rights

11

declares, that 'all persons shall, <u>before conviction</u>, be bailable by sufficient securities, except for capital offenses, where the proof is evident or the presumption great.' And under our statutes, upon the hearing of applications for bail, <u>either before or after indictment</u>, the court is not, as according to the practice in England, confined to the written evidence taken down before the committing magistrate; but the case is heard de novo, the solicitor and prosecutor are notified to attend, and witnesses are subpoenaed both for the State and for the defendant, and examined before the court, <u>which is to decide the application upon 'the evidence produced</u>.' -- Code, §§ 3721, 3722, 3732-3, 3745-6, 3669, 3673; <u>Ex parte Mahone</u>, 30 Ala. 49 [(1857)]; <u>Ex parte Banks</u>, 28 Ala. 89 [(1856)].

"By section 3669 of the Code it is provided, that 'the defendant cannot be admitted to bail, in cases which are or may be punishable with death, where the court or magistrate is of opinion on the evidence that the defendant is guilty of the offense in the degree punishable capitally.' This section of the Code must be so construed as to make it conform to the 17th section of our bill of rights, above quoted. Accordingly, to justify a court in refusing bail, <u>whether before or after indictment found</u>, the judge must be of opinion, <u>upon the evidence introduced upon the hearing of the application</u>, that 'the proof is evident, or the presumption great,' that the defendant is guilty of the offense in the degree punishable capitally."

34 Ala. at 275-276 (emphasis added). The Court then turned to the case before it, which included "[m]uch testimony ... in [the] record," and held:

"We cannot say, upon the <u>evidence</u> before us, thus considered, that the 'proof is evident or the <u>presumption</u> great,' that the petitioners ... are

guilty of murder in the first degree. They are, therefore, entitled to bail as [a] matter of right." Id. at 277 (emphasis added).

It is evident from Ex parte Bryant that, at least at that time, the denial of bail in a capital case could not be based on an indictment but, instead, had to be based on evidence presented to the trial court in the bail hearing. Indeed, this Court expressly stated that Section 17 and § 3669 had abolished the common-law rule that an indictment for a capital offense creates a presumption of guilt that justifies the denial of bail. The Court also made a point of noting -- twice -- that the evidentiary requirements of Section 17 and § 3669 applied in both preindictment and postindictment cases, and nothing in the Court's opinion indicates that an indictment played any role whatsoever in a bail determination. Other cases from the middle of the 19th century were in accord. See, e.g., Ex parte Banks, 28 Ala. 89, 99 (1856) (ignoring the fact that the defendant had been indicted and, instead, holding that, "[b]y the provisions of our constitution and Code, the defendant is 'entitled to bail as a matter of right,' at our hands, unless we are of opinion, on the evidence, that he is guilty of murder in the degree which may be punished capitally" (emphasis added)). The Court's holding in Ex parte Bryant makes sense,

too, because an indictment merely establishes probable cause to believe that the defendant has committed the charged offense, see Smith v. Wendy's of the South, Inc., 503 So. 2d 843, 844 (Ala. 1987) (noting the "prima facie showing of the existence of probable cause created by an indictment"), whereas the standard set forth in Section 17 -- "evident" "proof" of guilt or a "great" "presumption" of guilt -- appears to have required something greater than mere probable cause. See Commonwealth v. Talley, 670 Pa. 671, 722, 726, 265 A.3d 485, 515, 517-18 (2021) (noting that the phrase "when the proof is evident or the presumption great" as used in the Pennsylvania Constitution reflected "that the framers intended the evidentiary threshold for denying bail to be greater than that needed to arrest or indict the accused in the first place"; "a mere determination of probable cause … surely cannot be equated with the 'proof is evident or presumption great' standard").

However, in 1870, without any substantive change in the applicable constitutional or statutory provisions, this Court decided Ex parte Vaughan, 44 Ala. 417 (1870).[3]  In that case, the Court stated: "On an

----

[3]The Alabama Constitution was amended in 1861, 1865, and 1868, but it continued to provide that, before conviction, bail was a matter of right "except for capital offenses, when the proof is evident, or the

14

application for bail by a prisoner, who is shown to be under indictment for murder, he is presumed to be guilty of the charge in the highest degree, and that presumption must be overcome by proof. -- Hurd on Habeas Corpus, 438-446." 44 Ala. at 418. That statement in Ex parte Vaughan, which was not supported with citations to our constitution, our statutory law, or any caselaw, appears to have served as the birth of the presumption rule in Alabama.

In fairness to the petitioners, Ex parte Vaughan seems problematic in several respects. First, in Ex parte Bryant, this Court offered sound analysis in support of its holding that, unlike the common law, our constitution and our statutory law provided that the denial of bail in a capital case had to be based on evidence, not an indictment. In Ex parte Vaughan, on the other hand, the Court offered no analysis in support of its pronouncement of the presumption rule -- it certainly did not attempt

---

presumption great," although this provision was moved to Article I, Section 18, in 1868. It was later moved back to Section 17 in the Alabama Constitution of 1875.

The Alabama Code was amended in 1867, and § 3669 was recodified at § 4234, but the statute continued to provide that a defendant was not entitled to bail "where he is charged with an offense which may be punished by death, if the court or magistrate is of opinion, on the evidence adduced, that he is guilty of the offense in the degree punished capitally."

to defend the rule as a product of constitutional or statutory interpretation -- and the Court cited no legal authority to support the rule. Instead, the Court cited only a single treatise -- Rollin C. Hurd, <u>A Treatise on the Right of Personal Liberty, and on the Writ of Habeas Corpus</u> (1858) -- and that part of the treatise the Court cited was simply a survey of how different states treated the indictment in bail hearings, some of which were consistent with the rule pronounced in <u>Ex parte Vaughan</u> and some of which were not. Notably missing from that survey, however, is any Alabama caselaw. In addition, the presumption rule appears to have been unnecessary in <u>Ex parte Vaughan</u> because there was evidence that tended to establish the defendant's guilt -- namely, his confession -- which justified the denial of bail without a presumption of guilt stemming from the indictment. <u>See</u> <u>Ex parte Vaughan</u>, 44 Ala. at 418 ("The prisoner offered no evidence in his own behalf, while against him were the finding of the grand jury, <u>and his admission that he did the killing</u>." (emphasis added)). Thus, the pronouncement of the presumption rule was arguably dicta from the beginning.

At this point, then, the petitioners stand on solid ground in arguing that the presumption rule "is completely unsound when traced to its

16

origins." Petitions, p. 17. Nevertheless, the petitioners do not dispute that the presumption rule has now been well established in Alabama caselaw for more than 150 years. One of the first cases we have found in which the State relied upon an indictment in opposing a defendant's request for bail is the 1885 case of Ex parte Hammock, 78 Ala. 414 (1885). In that case, the defendants requested bail after being indicted for murder, and the State relied solely on the indictment in opposing their request, despite the fact that several of its witnesses were present during the bail hearing and could have been called to testify. The defendants then presented potentially exculpatory evidence, but the probate court ruled that it was "of opinion that the presumption of degree of murder raised by the indictment [had] not [been] overturned." Id. at 415. The defendants petitioned this Court for a writ of habeas corpus, and this Court held that the defendants were entitled to bail. In support of its holding, the Court stated:

> "In proceedings to obtain bail, it is well settled that the production of an indictment found by a grand jury makes a prima facie case of guilt in the highest degree of which the defendant could be convicted under the indictment. -- Ex parte McGlawn, 75 Ala. 38 [(1883)]; Ex parte Rhear, 77 Ala. 92 [(1884)]; Church on Habeas Corpus, § 404. This, however, is but a presumption in the absence of all other proof. When exculpatory evidence is produced, such testimony must be

weighed, together with the presumption raised by the indictment; and the decision must be pronounced on the entire case as thus presented. As was said in Ex parte Bryant, 3[4] Ala. 270 [(1859)], 'To justify a court in refusing bail, whether before or after indictment found, the judge must be of opinion, upon the evidence produced upon the hearing of the application, that "the proof is evident, or the presumption great," that the defendant is guilty of the offense in the degree punished capitally.' We hold that, when the defendants introduced their testimony, the duty did not rest on them to introduce the State's evidence, that the court might, with fuller information, pronounce on its sufficiency. It was the State's duty to introduce its own criminative evidence, if it was deemed necessary to establish the probability of that supreme measure of guilt, which the law declares may be punished capitally. If, when all the testimony is weighed, the court can satisfactorily affirm that 'the proof is evident, or the presumption great,' that the petitioners are guilty of the offense charged in that degree which is not bailable, bail should be denied. If, on the other hand, the testimony is such as to disprove the defendant's guilt of the offense in the non-bailable degree, or, if when duly weighed, it is such that a fair-minded man would entertain a reasonable doubt of guilt in such degree, then the petitioner is entitled to bail.

"On the testimony found in this record, the petitioners were entitled to bail, and the probate judge should have so ordered, fixing the amount of the bond in such reasonable sum as will be likely to insure the appearance of the prisoners."

Id. at 416-17.

This Court did not hold in Ex parte Hammock that the defendants were entitled to bail because the State had relied solely on the indictment during the bail hearing. To the contrary, the Court clearly stated, in

accord with Ex parte Vaughan, that the indictment created a presumption of guilt that could have justified the denial of bail, and the Court explained that the State had a duty to present "criminative evidence" only "if it was deemed necessary" to refute the defendants' evidence. 78 Ala. at 416. Thus, the reason the Court granted relief in that case was because it concluded that the defendants' evidence "left in uncertainty whether the deceased came to his death at the hands of another, by accident, or by suicide," id. at 415, and the State had presented no evidence that tended to resolve that uncertainty. In short, then, Ex parte Hammock reinforced the presumption rule pronounced in Ex parte Vaughan, but it served as a warning to the State that relying solely on an indictment in a bail hearing is a risky strategy if the defendant presents potentially exculpatory evidence.

To be clear, the existence of cases like Ex parte Vaughan and Ex parte Hammock does not mean that Ex parte Bryant had been abandoned. To the contrary, several cases from the latter part of the 19th century followed the course charted by that earlier case. In Ex parte McAnally, 53 Ala. 495 (1875), this Court reiterated that the presumption rule used under the common law was no longer applicable in light of

19

Section 17 and § 4234, Ala. Code 1867 (the successor to § 3669), and the Court emphasized that the probable cause that underlies an indictment is not a sufficient basis for denying bail in a capital case. Citing Ex parte Bryant, the Court stated:

> "[T]he … inquiry is, is 'the proof evident, or the presumption great,' of the defendant's guilt. If it be not, <u>whatever may be the probable cause to detain him</u> to answer before a tribunal competent finally to adjudge the inquiry, <u>he is entitled not to a discharge, but to bail</u>. If the proof is evident, or the presumption great -- if the <u>evidence</u> is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right."

53 Ala. at 498 (emphasis added).

In Ex parte Sloane, 95 Ala. 22, 24, 11 So. 14, 15 (1892), this Court once again cited Ex parte Bryant in holding that the denial of bail in a capital case had to be based on evidence, and the Court specifically provided the following rule for use in a bail hearing:

> "It is held in this State, as a safe rule by which the question of bail must be determined, that when a malicious homicide is charged, to refuse bail in all cases where a judge would sustain a capital conviction, if pronounced by a jury, <u>on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail</u>; and in instances where the evidence is of less efficacy, to admit to bail."

(Emphasis added.)

Other cases from the late 1800s were also in accord with Ex parte Bryant. See Ex parte Weaver, 55 Ala. 250, 251 (1876) (noting that the defendant had been indicted for murder but holding that the State had presented evidence in the bail hearing that tended to "make[] a case of 'evident proof,' within the letter of the constitution, and which denies to defendant the privilege of bail"); Ex parte Nettles, 58 Ala. 268, 276 (1877) ("Under one phase of the testimony, the presumption was great that the defendant was guilty of murder in the first degree." (emphasis added)); Ex parte Richardson, 96 Ala. 110, 110, 11 So. 316, 316 (1892) (noting that, following an indictment, "many witnesses were examined" during the bail hearing, including witnesses presented by the State, which tended to establish the defendant's "guilt of the crime laid in the indictment"); and Ex parte Bonner, 100 Ala. 114, 14 So. 648 (1894) (holding that bail had been properly refused based on the evidence the State presented in the bail hearing). However, in addition to Ex parte Hammock, a few cases in the latter part of the 19th century adhered to the presumption rule pronounced in Ex parte Vaughan, though this Court continued to perpetuate the rule without acknowledging Section 17 or the statute that

21

governed bail in capital cases. See Ex parte Rhear, 77 Ala. 92 (1884); and Robinson v. Dickerson, 108 Ala. 161, 18 So. 729 (1895). In fact, at least one case applied the presumption rule even without an indictment, holding that the defendant's arrest provided a basis for denying bail. See Ex parte McGlawn, 75 Ala. 38 (1883).

In 1901, the citizens of Alabama ratified a new constitution, and Section 17 was moved to Article I, Section 16 ("Section 16"). However, the substance of Section 16 remained the same as that of Section 17, providing that "all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Likewise, although the Alabama Code was revised several times during the 20th century, the applicable statute continued to provide that, in order to deny bail in a capital case, a trial court had to be "of the opinion, on the evidence adduced, that [the defendant] [was] guilty of the offense." § 6337, Ala. Code 1907; § 3370, Ala. Code 1923; Title 15, § 195, Ala. Code 1940. Thus, as this Court had explained in Ex parte Bryant, both our constitution and our statutory law continued to provide that the denial of bail in a capital case had to be based on evidence, not an indictment.

22

Nevertheless, although the seed planted by Ex parte Vaughan had largely remained dormant in the 19th century, it sprouted and blossomed in the 20th century, appearing in numerous cases as a weed for defendants and a rose for the State. See, e.g., State v. Lowe, 204 Ala. 288, 289, 85 So. 707, 708 (1920) ("[A] prisoner under indictment for a capital felony is presumed to be guilty in the highest degree, and, to deserve bail as of right, must overcome that presumption by proof."); State v. Lee, 19 Ala. App. 71, 72, 94 So. 839, 840 (1922) (reaffirming the presumption rule but upholding the trial court's decision to grant bail because, although the indictment "made out a prima facie case against the prisoner," the defendant had presented testimony that tended to overcome the presumption of guilt and the State had not presented any evidence "tending to connect the defendant with the commission of the offense"); Deaver v. State, 24 Ala. App. 377, 377, 135 So. 604, 604 (1931) ("If the indictment was valid, the solicitor might rest upon it, and, in the absence of further evidence, the court would presume the crime to be in the highest degree charged in the indictment, and bail would be denied."); Rogers v. State, 30 Ala. App. 226, 4 So. 2d 266 (1941); Holmes v. State, 39 Ala. App. 422, 422, 102 So. 2d 673, 673 (1958) (affirming the denial of

23

bail when "the State offered in evidence the indictment against the petitioner, and rested," and the defendant then presented evidence of his own; "[i]n view of the presumption created by the indictment, and the further presumption to be accorded the conclusion of the trial judge who saw and heard the witnesses, we are unwilling to disturb his action"); Livingston v. State, 40 Ala. App. 376, 116 So. 2d 396 (1959); and Burks v. State, 600 So. 2d 374 (Ala. Crim. App. 1991), overruled on other grounds by State v. Grant, 378 So. 3d 576 (Ala. 2022). However, like the cases before them, none of those cases attempted to ground the presumption rule in Section 16 or the statute that governed bail in capital cases but, instead, merely repeated the rule that had been pronounced in Ex parte Vaughan.[4]

That is not to say that the presumption rule was always followed in the 20th century. Several cases during that century ignored the presumption rule altogether and held, in accord with Ex parte Bryant, that the denial of bail in a capital case had to be based on evidence, even

_____

[4]In State v. Lowe, 204 Ala. 288, 85 So. 707 (1920), this Court cited both Section 16 and the applicable statute, but the Court made no attempt to explain how the presumption rule could be reconciled with those provisions.

in a postindictment case. For example, in <u>Trammell v. State</u>, 284 Ala. 31, 221 So. 2d 390 (1969), the defendant had been indicted for robbery, which was a capital offense at the time, and appealed to this Court after the trial court denied bail. In reviewing the trial court's ruling, this Court made no mention of the presumption rule and, instead, cited Section 16 in applying the following rule:

> "We have long held that three prerequisites are necessary in order to support a denial of bail in such cases: The evidence must be clear and strong, that it would lead a well-guarded and dispassionate judgment to the conclusion that (1) the offense has been committed; (2) the accused is the guilty agent; and (3) he would probably be punished capitally if the law is administered."

284 Ala. at 32, 221 So. 2d at 390. Other cases during the 20th century, both from this Court and the Alabama Court of Appeals, were in accord. <u>See</u> <u>Lee v. State</u>, 281 Ala. 631, 206 So. 2d 875 (1968); <u>Holman v. Williams</u>, 256 Ala. 157, 53 So. 2d 751 (1951); <u>Washington v. State</u>, 41 Ala. App. 384, 133 So. 2d 392 (1961); <u>Easley v. State</u>, 36 Ala. App. 541, 60 So. 2d 479 (1952); <u>Robinson v. State</u>, 36 Ala. App. 528, 60 So. 2d 302 (1952); <u>Colvin v. State</u>, 36 Ala. App. 104, 53 So. 2d 99 (1951); and <u>Roddam v. State</u>, 33 Ala. App. 356, 356, 33 So. 2d 384, 384 (1948) (applying the "'safe rule'" that bail should be denied "'in all cases where a judge would sustain a

capital conviction, if pronounced by a jury on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail, and, in instances where the evidence is of less efficacy, to admit to bail'" (quoting Ex parte Sloane, 95 Ala. at 24, 11 So. at 15)).

More recently, though, during the first 25 years of this century, this Court has reaffirmed the presumption rule. In Ex parte Hall, 844 So. 2d 571, 573 (Ala. 2002), this Court stated: "It is well established that a person accused by indictment of a capital offense must overcome the presumption of his guilt by proof, in order to be entitled to bail." The next year, this Court once again gave its stamp of approval to the presumption rule in Ex parte Patel, 879 So. 2d 532 (Ala. 2003), and, in doing so, attempted to reconcile the conflicting caselaw on this issue by making a distinction between preindictment and postindictment cases. Specifically, the Court acknowledged and reaffirmed the presumption rule for use in postindictment cases, but, because the defendant had not been indicted in that case, the Court held that the defendant was entitled to bail because the State had failed to present "'clear and strong'" evidence indicating that he was guilty of capital murder. 879 So. 2d at 533 (quoting Trammell, 284 Ala. at 32, 221 So. 2d at 390). Although this

26

attempt to reconcile the conflicting caselaw was understandable, the reality, as this Court had recognized in Ex parte Bryant, is that there was no distinction made between preindictment and postindictment cases in either Section 16 or § 15-13-3(a), which, since 1975, has been the statute that governs bail in capital cases.  Instead, like their predecessors, Section 16 merely referred to the time "before conviction," and § 15-13-3(a) applied to any person "charged" with a capital offense, which may or may not be by way of an indictment.

In 2009, this Court decided Ex parte Wilding, 41 So. 3d 75 (Ala. 2009), which appears to be the most recent case that involves application of the presumption rule.[5]  In that case, the defendant was indicted for capital murder, and the State presented no evidence during the bail hearing but, instead, relied solely on the indictment.  The defendant then presented several witnesses on his behalf, though none of those witnesses

_____

[5]More recently, in State v. Moyers, 214 So. 3d 1147, 1150-51 (Ala. 2014), this Court acknowledged that, "if a defendant has been indicted for a capital offense, that defendant is presumed guilty for purposes of setting bail, and the defendant has the burden to overcome that presumption before he or she is entitled to bail as a matter of right." However, the only issue that was actually before the Court in that case was whether a trial court could deny bail to a defendant who has been indicted for capital murder even if the State will not seek the death penalty -- a question the Court answered in the affirmative.

offered any testimony that was relevant to the issue of guilt; instead, they testified to the defendant's health issues and his character. The trial court granted bail, and the State petitioned the Court of Criminal Appeals for a writ of mandamus, requesting that the trial court be directed to vacate its order. The Court of Criminal Appeals granted the State's petition and, in support of its ruling, stated in its order that "'"'[w]here one is imprisoned by virtue of an indictment he is presumed to be guilty in the highest degree, and to be entitled to bail as a right, must overcome this presumption by proof.'"'" 41 So. 3d at 76 (citations omitted).

The defendant then petitioned this Court for a writ of mandamus, requesting that the Court of Criminal Appeals be directed to vacate its ruling. In support of his petition, the defendant argued that he was entitled to bail because the State had not presented any evidence indicating that he was guilty of capital murder. The State argued in response that it had no obligation to present any evidence because the defendant had been indicted for capital murder and that, as a result, "the burden at the bail hearing was on [the defendant] … to offer proof to overcome the presumption of guilt created by the indictment." 41 So. 3d

at 77. This Court agreed with the State. After noting that the defendant's evidence had been directed solely at his health issues and his character, the Court stated:

> "[The defendant's] proof was not directed to 'overcoming the presumption' of guilt that is inherent in the indictment against him. Because there was no proof addressing this presumption, the Court of Criminal Appeals did not err when it relied on precedent that requires such proof to find a clear showing of error on the part of the trial court."

41 So. 3d at 78. Thus, pursuant to Ex parte Wilding, when a defendant has been indicted for capital murder, the indictment creates a presumption of guilt that justifies the denial of bail -- without any further showing by the State -- unless, in the mind of the trial court, the defendant overcomes that presumption with relevant evidence.

As the foregoing historical survey demonstrates, the presumption rule is well established in Alabama caselaw, and, while there are no cases in which an Alabama appellate court has analyzed the rule in light of a constitutional provision and a statute that appear to have conflicted with it, the rule has nonetheless been repeated now for more than 150 years. As noted, however, during that time -- particularly in the early years -- there is also abundant caselaw providing that an indictment plays no role in a bail hearing in a capital case and that the denial of bail must instead

29

be based on evidence, and the petitioners argue that those cases are more in line with the language of the applicable constitutional and statutory provisions that existed at the time of those decisions. Thus, according to the petitioners, the line of cases that has advanced the presumption rule, beginning with Ex parte Vaughan, should be overruled, and this Court should return to a standard more in line with Ex parte Bryant.

That said, both Section 16 and § 15-13-3 were amended in 2022, so our inquiry into the validity of the presumption rule must necessarily take those amendments into consideration.

## II. The Current Versions of Section 16 and § 15-13-3

In 2019, 19-year-old Aniah Blanchard was kidnapped and murdered, allegedly by a man who, at that time, was charged with several violent offenses but was free on bail. At that time, Section 16 provided an absolute right to bail in all noncapital cases, just as the Alabama Constitution had since 1819. Likewise, § 15-13-2, Ala. Code 1975, provided an absolute right to bail in "all cases other than those specified in subsection (a) of Section 15-13-3." However, Blanchard's murder "caused a groundswell of support to remove that right for certain charges," Ex parte Green, 391 So. 3d 396, 398 (Ala. Crim. App. 2023),

and, in response, the Alabama Legislature passed Aniah's Law in 2021, see Act No. 2021-267, Ala. Acts 2021, which served to amend § 15-13-3 upon ratification of an amendment to Section 16. In 2022, the citizens of Alabama voted to amend Section 16, thus giving life to the current version of § 15-13-3. See Act No. 2021-267, § 3 ("This act shall become effective immediately upon the ratification of the amendment to [Section 16].").

Section 16 currently provides, in relevant part, that "all persons shall, before conviction, be bailable by sufficient sureties, unless charged with capital murder." Art. I, § 16, Ala. Const. 2022. Thus, under this new version of Section 16, a person charged with capital murder does not have a constitutional right to bail.[6] Section 15-13-3(a), on the other hand, still provides an avenue for obtaining bail in capital cases, just as each of its predecessors had. Currently, § 15-13-3(a) states: "A defendant is not eligible for bail when he or she is charged with capital murder pursuant to Section 13A-5-40, [Ala. Code 1975,] if the court is of the opinion, on the

_____

[6]Section 16 also includes other offenses for which there is no constitutional right to bail.

31

evidence adduced, that he or she is guilty of the offense."[7] (Emphasis added.) Each of the predecessors to § 15-13-3(a) contained language that is virtually identical to the language we have emphasized. See § 3669, Ala. Code 1852; § 4234, Ala. Code 1867; § 4842, Ala. Code 1876; § 4415, Ala. Code 1886; § 4357, Ala. Code 1896; § 6337, Ala. Code 1907; § 3370, Ala. Code 1923; and Title 15, § 195, Ala. Code 1940.

The fact that this aspect of § 15-13-3(a) is not different from its predecessors is not particularly surprising, given that the primary purpose of Aniah's Law was not to address the process governing bail in capital cases. Rather, the primary purpose of Aniah's Law was to add 12 noncapital offenses for which bail may also be denied. See generally Stephen Bockman, Aniah's Law: A Practical Analysis under Alabama

---

[7]The prior version of § 15-13-3(a) stated:

"A defendant cannot be admitted to bail when he is charged with an offense which may be punished by death if the court is of the opinion, on the evidence adduced, that he is guilty of the offense in the degree punishable capitally, nor when he is charged with a personal injury to another which is likely to produce death and which was committed under circumstances such as would, if death arises from such injury, constitute an offense which may be punished by death."

<u>Law</u>, 15 Faulkner L. Rev. 117 (2023).  That change was reflected in § 15-

13-3(b)(1), which currently states:

> "The court, after a hearing as provided in this subsection, after the presentment of an indictment or a showing of probable cause in the charged offense, and if the prosecuting attorney proves by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person, may deny a defendant's bail, if he or she is charged with any of the following offenses:
>
> > "a. Murder, as provided in Section 13A-6-2.
> >
> > "b. Kidnapping in the first degree, as provided in Section 13A-6-43.
> >
> > "c. Rape in the first degree, as provided in Section 13A-6-61.
> >
> > "d. Sodomy in the first degree, as provided in Section 13A-6-63.
> >
> > "e. Sexual torture, as provided in Section 13A-6-65.1.
> >
> > "f. Domestic violence in the first degree, as provided in Section 13A-6-130.
> >
> > "g. Human trafficking in the first degree, as provided in Section 13A-6-152.
> >
> > "h. Burglary in the first degree, as provided in Section 13A-7-5.

"i. Arson in the first degree, as provided in Section 13A-7-41.

"j. Robbery in the first degree, as provided in Section 13A-8-41.

"k. Terrorism, as provided in subdivision (b)(2) of Section 13A-10-152.

"l. Aggravated child abuse, as provided in subsection (b) of Section 26-15-3.1."[8]

### III. Should The Presumption Rule Survive?

With the foregoing history in mind, we now turn to the dispositive question in these cases, which is whether the presumption rule should survive as a part of Alabama law. In arguing that the presumption rule should be abolished, the petitioners have made a strong showing that, from its inception, the rule was incompatible with the predecessors to Section 16 and § 15-13-3(a). However, although the historical record of

---

[8]We note here that bail potentially could have been denied in these cases under § 15-13-3(b)(1)a. or § 15-13-3(b)(1)l. because the petitioners are also charged with intentional murder and aggravated child abuse. See note 1, supra. However, the State made no attempt to "prove[] by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the [petitioners'] appearance in court or protect the safety of the community or any person." § 15-13-3(b)(1). Instead, it is clear from the transcript of the bail hearings that the State relied on the petitioners' capital-murder charges in opposing their requests for bail.

the presumption rule is not wholly irrelevant to our analysis, the question before us is not whether the presumption rule was erroneous when it was adopted in 1870 but, rather, is whether it conflicts with our current constitutional and statutory law.

That said, as noted above, the changes made to Section 16 by Aniah's Law eliminated any constitutional right to bail in capital cases. Thus, any challenge to the presumption rule that is based on Section 16 must necessarily fail, regardless of whether the rule once conflicted with the Alabama Constitution. However, our analysis does not end with Section 16 because § 15-13-3(a) still provides an avenue for obtaining bail in a capital case, and the petitioners make a strong argument that the presumption rule conflicts with that statute, which provides in plain and unambiguous language that the denial of bail in a capital case must be based "on the evidence adduced." See Smith v. State, 25 Ala. App. 79, 80, 141 So. 265, 266 (1932) ("An indictment is not evidence in any sense of the word."). Thus, the petitioners ask us to overturn Ex parte Vaughan and its progeny on the ground that they are incompatible with our current statutory law. Nevertheless, the doctrines of stare decisis and

legislative acquiescence ultimately lead this Court to the conclusion that the presumption rule should remain a part of Alabama law.

A. Stare Decisis

When asked to overrule precedent, this Court typically must grapple with the doctrine of stare decisis, which affords respect to prior precedent and has therefore been described as a "'formidable hurdle'" to overruling a prior case or line of cases. Hexcel Decatur, Inc. v. Vickers, 908 So. 2d 237, 241 (Ala. 2005) (citation omitted). In other words, although the doctrine of stare decisis is "'"not an inexorable command,"'" Grant, 378 So. 3d at 583 (citations omitted), this Court does not overrule precedent lightly -- a fact the petitioners conceded during oral arguments before this Court. In addition,

> "[t]he argument for adhering to the doctrine of stare decisis is particularly strong when we are asked to overrule a prior decision that interpreted a statute or, as is the case here, is allegedly in direct conflict with a statute. Hexcel Decatur, Inc. v. Vickers, 908 So. 2d 237, 241 (Ala. 2005). This increased respect for stare decisis in such cases is because 'critics of our ruling can take their objections across the street,' i.e., to the Alabama Legislature, which can 'correct any mistake it sees.' Kimble [v. Marvel Ent., LLC], 576 U.S. [446,] 456 [(2015)]. Indeed, 'the United States Supreme Court has recognized that the doctrine of stare decisis has its greatest potency in matters of statutory interpretation, because [the legislative branch] is always free to supersede judicial interpretation with new legislation.' Hexcel Decatur, 908 So. 2d at 241."

36

Ex parte City of Orange Beach, [Ms. SC-2024-0526, Apr. 4, 2025] ___ So. 3d ___, ___ (Ala. 2025). Thus, because the petitioners argue that the presumption rule conflicts with the plain language of § 15-13-3(a), the argument for adhering to the doctrine of stare decisis is "particularly strong." Ex parte City of Orange Beach, ___ So. 3d at ___. See also Hexcel Decatur, 908 So. 2d at 241 (noting "the strong role stare decisis plays in nonconstitutional jurisprudence").

Granted, as detailed above, there is conflicting caselaw on this issue, so the argument could be made that the doctrine of stare decisis simply has no applicability here. See Patterson v. McCormick, 177 N.C. 448, 99 S.E. 401, 405 (1919) ("The doctrine of stare decisis cannot be construed as giving a vested right when there are conflicting decisions. It can only be sustained when the decisions are uniform and consistent."); City of Xenia v. Smith, 39 N.E.2d 191, 194 (Ohio Ct. App. 1941) ("'[T]he uncertainty existing in our own decisions ... eliminates the problem of stare decisis ....'" (citation omitted)); and Coleman v. Page's Estate, 202 S.C. 486, 25 S.E.2d 559, 560 (1943) (noting that "the rule of stare decisis does not necessarily apply" when there are "conflicting decisions").

However, our caselaw throughout the first 25 years of this century has not been conflicted; rather, it has clearly and consistently adhered to the presumption rule. See Ex parte Hall, supra; Ex parte Patel, supra; Ex parte Wilding, supra; and State v. Moyers, 214 So. 3d 1147 (Ala. 2014). For example, in Ex parte Wilding, the most recent case that actually applied the presumption rule, this Court clearly and unequivocally reiterated that, for purposes of determining bail in a capital case, there is a "'presumption' of guilt that is inherent in the indictment." 41 So. 3d at 78. Likewise, as recently as 2014, we declared, albeit in dicta, that, "if a defendant has been indicted for a capital offense, that defendant is presumed guilty for purposes of setting bail, and the defendant has the burden to overcome that presumption before he or she is entitled to bail as a matter of right." Moyers, 214 So. 3d at 1150-51.

As noted, there are cases from this Court that appear to conflict with the presumption rule, but those cases are by and large from the middle part of the 20th century. Indeed, what appears to be the most recent such case from this Court -- Trammell, supra -- was decided in 1969. In other words, although there is a line of caselaw that once conflicted with the presumption rule, that line appears to have fizzled out

38

approximately 50 years ago, and what has remained since that time is this Court's firm commitment to the presumption rule.

In short, regardless of its questionable origin, the presumption rule can be traced back through this Court's caselaw for more than 150 years and can be traced back for approximately the last 50 years without encountering any conflicting caselaw from this Court. As the United States Supreme Court has explained, "the strength of the case for adhering to [prior] decisions grows in proportion to their 'antiquity.'" Gamble v. United States, 587 U.S. 678, 691 (2019) (citation omitted). Plus, now that Aniah's Law has cut off any constitutional challenge to the presumption rule, the issue before us is solely one of statutory interpretation, in which the role of stare decisis is "particularly strong." Ex parte City of Orange Beach, ___ So. 3d at ___. Thus, for those reasons, we decline to overrule Ex parte Vaughan and its progeny and, instead, hold that the doctrine of stare decisis justifies the continued use of the presumption rule in Alabama.

## B. Legislative Acquiescence

Even if we ignore the doctrine of stare decisis, there is another hurdle that the petitioners are unable to clear. It is a fundamental

principle that "the Legislature is presumed to be aware of existing law." Mobile Infirmary Med. Ctr. v. Hodgen, 884 So. 2d 801, 817 (Ala. 2003). Relying on that presumption, this Court has held that, in some instances, "when the Legislature amends a statute and does not do so in a way that affects this Court's precedents, we presume that the Legislature has 'adopt[ed] [that] particular construction.'" Ex parte City of Orange Beach, ___ So. 3d at ___ (citation omitted). See also Hexcel Decatur, 908 So. 2d at 241 (noting that the Legislature may be presumed to have "acquiesced in" this Court's precedents when it amends a statute and does not do so in a way that impacts those precedents).

That said, when the Legislature amended § 15-13-3(a) in 2022, it retained the phrase "on the evidence" -- language that has existed side-by-side with the presumption rule for more than 150 years. Plus, as we just explained, the presumption rule has been firmly rooted in our caselaw for the last several decades, and, during that time, there have not been any conflicting cases from this Court on this issue. Thus, there is reason to believe that the Legislature has "acquiesced in" this Court's adoption of the presumption rule for use in capital cases, Hexcel Decatur, 908 So. 2d at 241, especially given that the most recent caselaw on this

40

issue has been in favor of the presumption rule. That conclusion is strengthened by the fact that, in passing Aniah's Law, the Legislature chose to remove any constitutional right to bail in capital cases, which certainly does not reflect a desire to make it <u>easier</u> for a defendant in a capital case to obtain bail, which the abolishment of the presumption rule would potentially do.

Fundamental to our legislative-acquiescence analysis is the principle that the Legislature "knows how to draft a statute" to achieve the desired effect. <u>State v. Blane</u>, 985 So. 2d 384, 387 (Ala. 2007). Thus, if the Legislature disagreed with our adoption of the presumption rule and wanted to abolish the rule, it certainly knows how to draft a statute to that effect. Indeed, we note that, after the California Supreme Court adopted the presumption rule for use in that state, the California Legislature enacted a statute that expressly abolished that rule, <u>see</u> <u>In re Harris</u>, 16 Cal. 5th 292, 309 n.3, 550 P.3d 116, 125 n.3, 322 Cal. Rptr. 3d 157, 168 n.3 (2024), which demonstrates the ease with which our Legislature could have likewise abolished the presumption rule had it wanted to do so. Yet, as noted, when the Legislature amended § 15-13-3(a) in 2022, it retained the "on the evidence" language that has long

existed side-by-side with the presumption rule, which suggests that it did not intend for the new version of the statute to modify the procedures that have long been used in making the bail determination in a capital case.

Finally, in that same vein, § 15-13-3(b)(1) provides that "the presentment of an indictment" is a sufficient basis upon which to deny bail in cases involving the 12 noncapital offenses listed in that subsection, provided that the State "proves by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person." Thus, although the State is required to present evidence in a bail hearing that involves one of those offenses, it is not required to present evidence of the defendant's guilt but, instead, may rely on the indictment alone, if one exists. In other words, the Legislature has expressly adopted the presumption rule for use in cases involving the noncapital offenses listed in § 15-13-3(b)(1), which indicates to this Court that the Legislature does not find the presumption rule to be problematic in capital cases and further supports the conclusion that

the Legislature has "acquiesced in" this Court's approval of the rule for use in such cases. Hexcel Decatur, 908 So. 2d at 241.

For the foregoing reasons, we decline the petitioners' request that we abolish the presumption rule. Although the birth of that rule was certainly suspect, it has now been firmly rooted in Alabama caselaw for more than 150 years and has reigned supreme in our caselaw for the last several decades. There are also valid reasons, detailed above, for concluding that the Legislature not only has no issue with the use of the presumption rule in capital cases but, indeed, prefers it, and if we are wrong, the Legislature certainly has the authority and ability to abolish the rule. Unless and until that occurs, however, the presumption rule remains good law in Alabama, which means that, when a defendant has been indicted for capital murder, the indictment creates a presumption of guilt that justifies the trial court in denying bail. Thus, in order to obtain bail, the defendant has the burden of presenting evidence that, when weighed against any evidence the State chooses to present, convinces the trial court that the presumption of guilt has been overcome. As this Court succinctly explained in Ex parte Hammock approximately 140 years ago:

43

"In proceedings to obtain bail, it is well settled that the production of an indictment found by a grand jury makes a prima facie case of guilt in the highest degree of which the defendant could be convicted under the indictment. This, however, is but a presumption in the absence of all other proof. When exculpatory evidence is produced, such testimony must be weighed, together with the presumption raised by the indictment; and the decision must be pronounced on the entire case as thus presented."

78 Ala. at 416 (citations omitted).

## IV. Are the Petitioners Entitled to Bail?

Having determined that the presumption rule remains good law, we turn to the petitioners' argument that the evidence they presented in their bail hearings overcame the presumption of guilt stemming from their indictments. As we noted at the outset, because the petitioners have yet to face trial, we will not provide a detailed discussion of the evidence that was presented in the bail hearings, and we do not find such a discussion to be necessary. Rather, it is sufficient to note that the petitioners presented evidence that, they say, indicated that they did not have the particularized intent to kill E.E., which is a necessary element of capital murder, see Phillips v. State, 287 So. 3d 1063, 1133 (Ala. Crim. App. 2015), and they argue that the State failed to present any evidence to the contrary.

It is true that the State did not present any direct evidence during the bail hearings and instead relied on the indictments and its cross-examination of the petitioners' witnesses.[9]  However, cross-examination is a powerful tool that can be used to undermine the credibility of a witness; in fact, it has been described as "'the greatest legal engine ever invented for the discovery of the truth.'"  White v. Illinois, 502 U.S. 346, 356 (1992) (citation omitted).  See also Davis v. Alaska, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.").  In these cases, the petitioners presented witnesses whose testimony, according to the petitioners, was exculpatory, and the State cross-examined those witnesses with the aim of undermining their credibility and/or demonstrating that their testimony did not overcome the presumption of guilt.  The circuit court had the opportunity to observe the witnesses as they testified and was tasked with assessing their

_____

[9]During oral arguments before this Court, the State contended that it presented photographic evidence during the bail hearings.  The transcript of the bail hearings reflects that the State marked some photographs as exhibits and showed them to certain witnesses, but there is no indication that those exhibits were admitted into evidence or even that the State proffered them for admission.

credibility and determining what weight, if any, to give their testimony. In conjunction with that role, the circuit court was free to reject part or even all of the witnesses' testimony, including the testimony of the expert witnesses, and was free to conclude that their testimony was not sufficient to overcome the presumption of guilt or even that their testimony indicated guilt. See Ex parte Loggins, 771 So. 2d 1093, 1108 (Ala. 2000) (noting that Alabama law allows a fact-finder to reject the testimony of a defendant's witnesses, even if those witnesses are expert witnesses and even if all of the witnesses are presented by the defense); and Ex parte Roberts, 735 So. 2d 1270, 1278 (Ala. 1999) (noting that "'[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence'" are questions for the fact-finder (citation omitted)).

In short, contrary to the petitioners' argument, the fact that the State did not present its own direct evidence during the bail hearings does not mean that the petitioners are automatically entitled to bail. The bail hearings began with a presumption of guilt based on the indictments, and, although the petitioners believe that their evidence was sufficient to

overcome that presumption, the circuit court was not required to, and did not, view their evidence in the same way. Thus, in order to grant the petitioners relief, this Court would have to place itself in the shoes of the circuit court and reweigh the evidence against the presumption of guilt after making our own credibility determinations, which would necessarily be based on a cold record without the advantage of observing the witnesses as they testified. This we of course will not do because "appellate courts do not weigh evidence, particularly when 'the assessment of the credibility of witnesses is involved.'" J.C. v. State Dep't of Hum. Res., 986 So. 2d 1172, 1185 (Ala. Civ. App. 2007) (citation omitted). Rather, "'[t]he credibility of witnesses is for the trier of fact, whose finding is conclusive on appeal. [Alabama appellate courts] cannot pass judgment on the truthfulness or falsity of testimony or on the credibility of witnesses.'" Ex parte Loggins, 771 So. 2d at 1106 (citation omitted). Accordingly, this argument does not entitle the petitioners to relief.

We also find no merit in the petitioners' argument that, given the evidence they presented, the denial of bail in these cases violates the Eighth Amendment to the United States Constitution, which states:

47

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "This Clause, [however], says nothing about whether bail shall be available at all." United States v. Salerno, 481 U.S. 739, 752 (1987). Thus, because the circuit court denied bail in these cases, rather than set an amount of bail that could be challenged as excessive, no Eighth Amendment violation occurred. See Fields v. Henry Cnty., Tenn., 701 F.3d 180, 183-84 (6th Cir. 2012) ("Importantly, the Eighth Amendment does not mandate bail in all cases. United States v. Salerno, 481 U.S. 739, 753-54, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) (citing Carlson v. Landon, 342 U.S. 524, 545-46, 72 S. Ct. 525, 96 L. Ed. 547 (1952)). Rather, the Eighth Amendment mandates that when bail is granted, it may not be unreasonably high in light of the government's purpose for imposing bail.").

## Conclusion

For the reasons set forth in this opinion, we decline to abolish the presumption rule that has been used for more than 150 years in bail hearings in capital cases. Thus, when a defendant has been indicted for capital murder, the indictment creates a presumption of guilt -- for purposes of a bail hearing only -- and, to be entitled to bail, the defendant

must present evidence that, when weighed against any evidence that the State chooses to present, convinces the trial court that the presumption has been overcome. If the defendant cannot carry that burden, then the trial court must deny bail.

In these cases, the circuit court had the opportunity to observe the petitioners' witnesses as they testified, to assess those witnesses' credibility, and to resolve any competing inferences from their testimony, and the court found that the petitioners' evidence was not sufficient to overcome the presumption of guilt stemming from their indictments. This Court will not substitute its judgment for that of the circuit court. Thus, the petitioners have not demonstrated that they are entitled to a writ of habeas corpus, and their petitions are therefore denied.

SC-2025-0172 -- PETITION DENIED.

SC-2025-0279 -- PETITION DENIED.

Stewart, C.J., and Parker, J., concur.

McCool, J., concurs specially, with opinion.

Shaw, J., concurs in the result, with opinion, which Bryan and Mendheim, JJ., join.

Wise, J., concurs in the result.

Cook, J., concurs in part and dissents in part, with opinion.

Sellers, J., dissents, with opinion.

McCOOL, Justice (concurring specially).

I authored the Court's opinion in these cases and concur fully in its analysis. I write specially to explain that the Blount Circuit Court did not apply the correct standard when making the bail determinations in these cases but also to explain why, contrary to Justice Cook's contention, that error does not require this Court to send the cases back for reconsideration.

In short, Justice Cook argues that the main opinion defers to a finding that the circuit court never actually made; specifically, he argues that, because the court never formed a personal opinion that Mason John Grimes and Brooklyn Paige Grimes ("the petitioners") are guilty of capital murder, "it logically could not have decided if the 'presumption of guilt' [stemming from the indictments] had been overcome in these cases." ___ So. 3d at ___. That is incorrect. The circuit court did find that the presumption of guilt had not been overcome, but, as I will explain below, the court applied the wrong standard in making that finding, or, stated differently, it found that the presumption had not been overcome for the wrong reason. However, the petitioners have not argued that the circuit court applied the wrong standard in determining whether the presumption of guilt had been overcome, and they have not asked this

Court to send these cases back to the circuit court for it to reconsider their requests for bail under the correct standard. Instead, the petitioners have argued only (1) that the presumption rule should be abolished and (2) that, if the presumption rule remains in place, they presented sufficient evidence to overcome the presumption and that, as a result, this Court should instruct the circuit court to grant them reasonable bail. Thus, because the Court has determined that those arguments lack merit, there is no basis for sending these cases back to the circuit court for reconsideration.

## I. The Circuit Court's Findings

As noted, Justice Cook takes the position that this Court should send these cases back to the circuit court for reconsideration because, he says, the court did not find that the presumption of guilt had not been overcome. Setting aside for the moment that this is neither the argument the petitioners have made nor the relief they have requested, the fact is that the circuit court did make that finding.

To begin, the circuit court clearly recognized that there was a presumption of guilt stemming from the indictments and applied that presumption against the petitioners. Indeed, in its relatively short

52

orders, the circuit court expressly mentioned the presumption of guilt

four different times and noted four different times that the petitioners

had the burden of overcoming that presumption. After repeatedly

acknowledging those principles, the circuit court stated:

> "The question before the court as it relates to the presumption is not one of 'will' the defendant be convicted but 'could' the defendant be convicted. And if a jury did reach a verdict of guilty could that verdict be maintained based on the evidence presented."

(Emphasis added.) Then, in closing, the circuit court stated:

> "In this case it is clear the defendant has the burden to overcome the presumption for purposes of establishing bond because [he/]she is charged by way of an indictment for an offense covered by 15-13-3(a)[, Ala. Code 1975]. Based on the evidence presented in the hearing the court is of the opinion that conviction by a jury could be sustained and the presumption has not been overcome."

(Emphasis added.)

Thus, it is clear to me that the circuit court found (1) that there was

a presumption of guilt stemming from the indictments and (2) that the

presumption had not been overcome because, in the court's view, the

evidence presented in the bail hearings was sufficient to sustain a

capital-murder conviction. In other words, it is evident that the circuit

court believed that the question to ask in determining whether the

presumption of guilt has been overcome is whether there is sufficient evidence to sustain a capital-murder conviction. Granted, as I discuss below, that is not the correct question to ask -- whether the presumption of guilt has been overcome hinges on the personal opinion of the circuit court, not on whether there is sufficient evidence to sustain a capital-murder conviction. However, although the circuit court applied the wrong standard in determining whether the presumption of guilt had been overcome in these cases, the fact remains that the court clearly did make a finding that the presumption had not been overcome. The fact that the circuit court's reasoning or analysis was wrong does not mean that the court did not make the finding to which the main opinion defers. As for the circuit court's use of the wrong standard, which I discuss below, I reiterate that the petitioners have not provided this Court with briefing or argument of any kind regarding that error -- in fact, they have not even acknowledged the error -- and it is a long-standing principle that this Court will not place a trial court in error on an issue that has not been raised and argued in a party's brief. See Green v. Wedowee Hosp., 584 So. 2d 1309, 1311 n.4 (Ala. 1991) ("We note the well-settled law ... that a party's failure to argue an issue in brief to an appellate court is

54

tantamount to a waiver of that issue on appeal and that an appellate court will consider only those issues that have been properly delineated and will not search the record for errors that have not been raised before the appellate court.").

## II. The Standard Applied by the Circuit Court

Turning to the standard that the circuit court applied, Justice Cook and I agree that the court applied the wrong standard. Section 15-13-3(a), Ala. Code 1975, provides that a trial court may deny bail in a capital case only if the court is "<u>of the opinion</u>, on the evidence adduced, <u>that [the defendant] is guilty of the offense</u>." (Emphasis added.) As just noted, however, in these cases the circuit court did not state in its orders denying bail that it was "of the opinion" that the petitioners are guilty of capital murder. <u>Id.</u> Instead, the circuit court stated that it was "of the opinion <u>that conviction by a jury could be sustained</u>." (Emphasis added.)

To be sure, there is caselaw scattered throughout the muddled history of the presumption rule (some of which is cited in the circuit court's orders) that appears to support the standard that the circuit court applied. For example, in <u>Ex parte Sloane</u>, 95 Ala. 22, 24, 11 So. 14, 15 (1892), this Court stated:

"It is held in this State, as a safe rule by which the question of bail must be determined, that when a malicious homicide is charged, to refuse bail in all cases where a judge would sustain a capital conviction, if pronounced by a jury, on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail; and in instances where the evidence is of less efficacy, to admit to bail."

However, concluding that the evidence is sufficient to <u>sustain a capital-murder conviction</u> returned by a jury is not the same as forming a <u>personal opinion</u> that the defendant is guilty of capital murder, which is what § 15-13-3(a) requires. The former is simply a burden of <u>production</u>, whereas the latter is a burden of <u>persuasion</u>. In other words, a trial court, when considering the evidence in a light most favorable to the prosecution, could be of the opinion that the prosecution has presented enough evidence to submit the case to a jury and to sustain a capital-murder conviction if one is returned, while at the same time not personally being "of the opinion" that the defendant is guilty of that offense. <u>Id.</u> After all, a jury and a trial court might interpret evidence differently, draw different inferences from the evidence, and make different credibility determinations. Of course, I recognize that it is possible for a trial court to be of the opinion that the evidence is sufficient to sustain a capital-murder conviction and, at the same time, also be "of

56

the opinion" that the defendant is guilty of capital murder.  Id.  But, as just noted, although those two opinions <u>could</u> exist simultaneously, they do not <u>necessarily</u> do so.

It is therefore my opinion that the "safe rule" discussed in <u>Ex parte Sloane</u> and repeated in subsequent cases is incorrect and should not be used by trial courts any longer in bail hearings in capital cases.  Rather, in accordance with the plain language of § 15-13-3(a), a trial court should deny bail in a capital case only if the court is "of the opinion" that the defendant is guilty of capital murder.  Conversely, a trial court should grant bail in a capital case if the court is <u>not</u> "of the opinion" that the defendant is guilty of capital murder, <u>id.</u>, even if the court concludes that there is enough evidence for a jury to find that the defendant is guilty of capital murder.

That said, I emphasize once again that the fact that the circuit court applied the wrong standard in these cases does not provide a basis for granting the petitioners relief because that is not the argument they have made.  <u>See</u> <u>Green</u>, <u>supra</u>.  In fact, as I noted above, the petitioners have not even <u>acknowledged</u> that the circuit court used the incorrect standard, much less argued that the error entitles them to relief.  Instead, the

57

petitioners have argued only (1) that the presumption rule should be abolished and (2) that, if the presumption rule remains in place, they presented sufficient evidence to overcome the presumption and that, as a result, this Court should instruct the circuit court to grant them reasonable bail. Thus, I disagree with Justice Cook's contention that we should send these cases back to the circuit court for that court to reconsider the petitioners' requests for bail and to apply the correct standard in doing so. This Court has considered and rejected the arguments <u>that the petitioners have raised</u> and has therefore properly denied their petitions for a writ of habeas corpus. As for future cases, however, I caution trial courts that are tasked with making bail determinations in capital cases to make those determinations in accordance with the plain language of § 15-13-3(a), i.e., by forming a personal opinion as to whether the defendant is guilty or not guilty of capital murder.

SHAW, Justice (concurring in the result).

I respectfully concur in the result. For purposes of determining whether to grant bail in a capital case, caselaw holds that an indictment creates a presumption of guilt that the defendant must overcome. Recent changes to our law on bail found in Aniah's Law, Act No. 2021-267, Ala. Acts 2021, and an amendment to Article I, § 16, Ala. Const. 2022, have strengthened this caselaw.

According to the ancient decision in Ex parte Bryant, 34 Ala. 270, 273 (1859), the common law allowed bail for all offenses. Bail was permissible for those accused of capital offenses if the evidence of their guilt was weak; however, if the accused was indicted, then there was a presumption of guilt on that basis alone for purposes of bail, which would then be denied. 34 Ala. at 275. Like the main opinion, I will refer to this as the "presumption rule."

Ex parte Bryant went on to hold that the presumption rule was abolished in Alabama. That determination was premised on the right to bail found in Article I, § 17, of the Alabama Constitution of 1819, which stated: "All persons shall, before conviction, be bailable by sufficient securities, except for capital offences, when the proof is evident, or the

59

presumption great ...." But bail in capital cases could still be denied "when the proof is evident, or the presumption great," that is, when there was a determination from evidence that the defendant appeared guilty. Id. As discussed below, a constitutional right to bail in capital cases no longer exists.

According to Ex parte Bryant, there was a statutory scheme to determine whether bail should be denied in capital cases, which included § 3669, Ala. Code 1852, that stated, in pertinent part: "The defendant cannot be admitted to bail in cases: (1) Which are or may be punishable with death, where the court or magistrate is of opinion, on the evidence, that the defendant is guilty of the offence, in the degree punished capitally." Regarding § 3669, the decision in Ex parte Bryant stated:

> "This section of the Code must be so construed as to make it conform to the 17th section of our bill of rights .... Accordingly, to justify a court in refusing bail, whether before or after indictment found, the judge must be of opinion, upon the evidence introduced upon the hearing of the application, that 'the proof is evident, or the presumption great,' that the defendant is guilty of the offense in the degree punishable capitally."

34 Ala. at 276. This rule -- i.e., that a judge must examine the evidence and be of the opinion that the proof is evident, or the presumption great,

60

that the defendant is guilty before denying bail -- conflated § 3669 with § 17, Ala. Const. 1819.

The language of § 17, Ala. Const. 1819, continued in similar form in later constitutions. Article I, § 16, of the Alabama Constitution of 1901, stated, in pertinent part: "That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Section 3669 was also succeeded in somewhat similar form, ultimately to be found in § 15-13-3, Ala. Code 1975. Nevertheless, some decisions continued to apply the presumption rule, see, e.g., Ex parte Vaughan, 44 Ala. 417 (1870), but others continued applying the holding in Ex parte Bryant. In Ex parte Hammock, 78 Ala. 414, 416 (1885), the Court held that it was "well settled" that an indictment "makes a prima facie case of guilt in the highest degree." However, the Court acknowledged the decision in Ex parte Bryant and indicated that the defendant may attempt to rebut the presumption. Ex parte Hammock thus attempted to harmonize Ex parte Bryant and the presumption rule.

In this century there has been no conflicting dichotomy of cases in which, in some, the presumption rule is applied but, in others, the State

is required to prove the defendant's guilt despite the existence of an indictment. Specifically, our caselaw has acknowledged that, pursuant to § 16, Ala. Const. 1901, bail may be denied a capital defendant when the proof of guilt is sufficient. But when there is an indictment, the presumption rule applies, and the defendant must rebut the presumption in order to show eligibility for bail.

In Ex parte Landers, 690 So. 2d 537, 538 (Ala. Crim. App. 1997), a capital-murder defendant who was denied bail argued that the evidence against him was "weak." The court acknowledged the evidentiary showing then required by § 16 to deny bail, which was essentially the same rule discussed in Ex parte Bryant, supra. However, the defendant had been indicted, and the court, applying the presumption rule, noted that the defendant had to overcome that presumption with proof. The defendant had offered no such evidence at his bail hearing; applying the presumption rule, the court in Ex parte Landers denied the defendant relief.

In Ex parte Hall, 844 So. 2d 571 (Ala. 2002), a capital-murder defendant challenged the trial court's denial of bail without first holding a hearing. This Court cited caselaw discussing the evidentiary

62

requirements of § 16, Ala. Const. 1901, but, citing Ex parte Landers, also recognized the presumption created by an indictment, which could be overcome by the defendant. Section 15-13-3 was cited for the proposition that a bail hearing should be held to develop a proper record. 844 So. 2d at 574.

In Ex parte Patel, 879 So. 2d 532 (Ala. 2003), this Court noted the evidentiary requirements of § 16, Ala. Const. 1901, to deny bail in a capital case, as well as the State's evidentiary burden to establish that a denial of bail was warranted. But the Court also noted the presumption of guilt when the defendant is indicted and that "a defendant must overcome this presumption by proof." 879 So. 2d at 534. The defendant in that case had not yet been indicted, so the presumption did not apply.

In Ex parte Wilding, 41 So. 3d 75, 76 (Ala. 2009), a defendant indicted for a capital offense argued, citing Ex parte Patel, that, in order for the trial court to deny him bail, the State was required to present evidence proving that he committed the crime. The State countered with the holding in Ex parte Hall, in which the evidence required by § 16, Ala. Const. 1901, was acknowledged, but the presumption of guilt created by an indictment nevertheless applied. 41 So. 3d at 77. This Court,

63

accepting the State's argument, noted that the defendant's evidence did not overcome the presumption. Id. at 78.[10]

This caselaw is clear. The State has the burden of proving guilt before indictment, but, after indictment, there is a presumption of guilt that must be overcome by the defendant. See, e.g., Ex parte Patel, 879 So. 2d at 533-34. While criticism may be lodged against these decisions for failing to address the language of § 15-13-3, the reason they did not do so also seems clear: the courts instead addressed the language of § 16, which, as a constitutional provision, was superior to the statute. But despite this constitutional provision, which prior caselaw acknowledged, the presumption rule was still applied. The presumption rule existed in conjunction with the Constitution and despite § 15-13-3.

---

[10]Other cases have noted the use of the presumption rule. See State v. Moyers, 214 So. 3d 1147, 1150-51 (Ala. 2014) (noting that, "for the trial court to deny a request for bail from a defendant charged with a capital offense," the "State must prove the … prerequisites noted in Ex parte Patel," but that, "if a defendant has been indicted for a capital offense, that defendant is presumed guilty for purposes of setting bail, and the defendant has the burden to overcome that presumption"), and Burks v. State, 600 So. 2d 374, 381 (Ala. Crim. App. 1991) (citing the presumption rule in rebuttal of the defendant's argument "that he was entitled to reasonable bond because the proof was not evident nor the presumption great that he was guilty of the capital offense"), overruled on other grounds by State v. Grant, 378 So. 3d 576 (Ala. 2022).

Our Constitution no longer provides a right to bail in capital cases or a requirement that such a right is overcome when the proof of guilt is evident or the presumption of guilt is great. In 2021, the legislature passed Aniah's Law, which revised our statutory law on bail. In that same session, the legislature proposed a constitutional amendment. Before that amendment became effective, Article I, § 16, of the Alabama Constitution of 1901, stated the right to bail in a capital case and the evidentiary burden required to overcome it as follows: "That all persons shall, before conviction, be bailable by sufficient securities, except for capital offenses, when the proof is evident or the presumption great." This was similar to § 17 of the Constitution of 1819, which the decision in Ex parte Bryant addressed. It was the law under which Moyers, Ex parte Wilding, Ex parte Patel, Ex parte Hall, Ex parte Landers, and Burks nevertheless discussed or applied the presumption rule.

With the ratification of the amendment to the Constitution proposed contemporaneously with the adoption of Aniah's Law, any constitutional right to bail in capital cases and certain noncapital cases was eliminated. Article I, § 16, of the Alabama Constitution of 2022, now states: "That all persons shall, before conviction, be bailable by sufficient

65

sureties, unless charged with capital murder" or other noncapital offenses that are specified in that amendment.[11] Thus, a fundamental basis for Ex parte Bryant and its abandoned progeny -- a constitutional right to bail in capital cases with an evidentiary mechanism to overcome that right -- no longer exists.

Aniah's Law also altered the operative statute governing bail in capital-murder cases, § 15-13-3. Section 15-13-3(a) now states: "A defendant is not eligible for bail when he or she is charged with capital murder pursuant to Section 13A-5-40, [Ala. Code 1975,] if the court is of the opinion, on the evidence adduced, that he or she is guilty of the offense." This seems functionally similar to § 3669 of the 1852 Code, in that a decision to deny bail in a capital case is based on an evidentiary

---

[11]The noncapital offenses include murder, § 13A-6-2. Ala. Code 1975; kidnapping in the first degree, § 13A-6-43, Ala. Code 1975; rape in the first degree, § 13A-6-61, Ala. Code 1975; sodomy in the first degree, § 13A-6-63, Ala. Code 1975; sexual torture, § 13A-6-65.1, Ala. Code 1975; domestic violence in the first degree, § 13A-6-130, Ala. Code 1975; human trafficking in the first degree, § 13A-6-152, Ala. Code 1975; burglary in the first degree, § 13A-7-5, Ala. Code 1975; arson in the first degree, § 13A-7-41, Ala. Code 1975; robbery in the first degree, § 13A-8-41, Ala. Code 1975; terrorism, § 13A-10-152(b)(2), Ala. Code 1975; and aggravated child abuse, § 26-15-3.1(b), Ala. Code 1975.

showing. However, this Code section is no longer buttressed with a constitutional requirement for such showing.

Section 15-13-3(b) also now provides a process for denying bail in certain noncapital cases, i.e., those now listed in § 16 of the Alabama Constitution of 2022. See note 11, supra. To do so, the State must show that "no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person." § 15-13-3(b)(1). But as to any demonstration that the defendant is guilty of the crime, the Code section seems to require only "the presentment of an indictment or a showing of probable cause in the charged offense." § 15-13-3(b). It would thus appear that, for purposes of denying bail for these noncapital offenses, Aniah's Law adopted the presumption rule. As for why no presumption rule was explicitly added to § 15-13-3(a) for capital cases, the reason seems clear -- the caselaw identified above already held that the presumption rule applied to capital cases, despite the prior wording of the Constitution and § 15-13-3. If our caselaw at the time Aniah's Law was passed were to have been relied upon by the legislature, there would have been no need to provide the presumption rule in the amended version of § 15-13-3(a).

67

The legislature, however, had to specify in § 15-13-3(b) that the presumption rule applied to the <u>noncapital</u> offenses because the presumption rule found in our caselaw applied <u>only to capital cases</u>.

As discussed above, prior caselaw, despite § 15-13-3 and the evidentiary burden found in the prior version of § 16, held that the presumption rule applies in capital cases when bail is sought and the defendant has been indicted. Aniah's Law and the amendment to § 16, Ala. Const. 2022, if anything, strengthens that caselaw by eliminating the constitutional right to bail in capital cases and removing any constitutional requirement for an evidentiary showing of guilt in order to deny it. <u>If the presumption rule applied when even the Constitution itself required an evidentiary showing to deny bail, then it still applies if only the Code section remains to provide a similar showing</u>.

The doctrine of stare decisis requires that we adhere to our prior caselaw using the presumption rule even if it purportedly conflicts with § 15-13-3(a). Stare decisis "'gives form, and consistency, and stability to the body of the law. Its structural foundations, at least, ought not to be changed except for the weightiest reasons.'" <u>Exxon Corp. v. Department of Conservation & Nat. Res.</u>, 859 So. 2d 1096, 1102 (Ala. 2002) (quoting

Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 340, 110 So. 574, 580 (1925) (Somerville, J., dissenting)).

> "The argument for adhering to the doctrine of stare decisis is particularly strong when we are asked to overrule a prior decision that … is allegedly in direct conflict with a statute. Hexcel Decatur, Inc. v. Vickers, 908 So. 2d 237, 241 (Ala. 2005). This increased respect for stare decisis in such cases is because 'critics of our ruling can take their objections across the street,' i.e., to the Alabama Legislature, which can 'correct any mistake it sees.' Kimble [v. Marvel Ent., LLC], 576 U.S. [446,] 456 [(2015)]. Indeed, 'the United States Supreme Court has recognized that the doctrine of stare decisis has its greatest potency in matters of statutory interpretation, because [the legislative branch] is always free to supersede judicial interpretation with new legislation.' Hexcel Decatur, 908 So. 2d at 241. Plus, the Legislature is presumed to be aware of this Court's decisions, Woodward Iron Co. v. Bradford, 206 Ala. 447, 449, 90 So. 803, 804 (1921), so, if a decision from this Court is inconsistent with a statute, and the Legislature has had ample time to correct us but has taken no steps to do so, then the argument for adhering to the doctrine of stare decisis stands on even firmer ground. See Hexcel Decatur, 908 So. 2d at 241 (adhering to the doctrine of stare decisis when asked to overrule precedent that had interpreted a statute because the Legislature had 'had more than 30 years to overrule or modify that decision' and had 'chosen not to do so' -- a fact that this Court interpreted as the Legislature's 'acquiesce[nce] in the holding')."

Ex parte City of Orange Beach, [Ms. SC-2024-0526, Apr. 4, 2025] ___ So. 3d ___, ___ (Ala. 2025) (emphasis added).

The legislature took the opportunity to significantly alter our constitutional foundation and statutory law regarding bail. In doing so,

it did not touch the presumption rule that, <u>at that time</u>, was clearly stated in our caselaw. In fact, the legislature adopted the presumption rule in noncapital cases. <u>If</u> the presumption rule was in "direct conflict" with prior versions of § 15-13-3, the legislature apparently saw no need to "'correct any mistake'" with its "'new legislation.'" <u>Orange Beach</u>, ___ So. 3d at ___ (citations omitted). Stare decisis "is particularly strong" in this case. <u>Id.</u> at ___.

Abandoning the presumption rule would undermine a premise upon which the legislature enacted Aniah's Law and amended § 16. The abrogation of the rule in light of this new statutory and constitutional scheme would mean that it would be harder to deny bail for capital murder than for first-degree burglary. See note 11, supra. I believe that stare decisis requires that it be upheld.

Mason John Grimes and Brooklyn Page Grimes ("the petitioners") argue that, even if this Court retains the presumption rule, they demonstrated that they were entitled to bail. When there is no presumption of guilt created by an indictment, the State has the burden to show that bail should be denied:

> "This Court has established three prerequisites to the denial of bail in a capital case: 'The evidence must be clear and

strong, that it would lead a well-guarded and dispassionate judgment to the conclusion that (1) the offense has been committed; (2) the accused is the guilty agent; and (3) he would probably be punished capitally if the law is administered.' Trammell v. State, 284 Ala. 31, 32, 221 So. 2d 390, 390 (1969). The State has the burden of proving that the crime was committed and showing 'facts that would convince the judge that upon final trial the judge would sustain a verdict pronouncing the defendant guilty and imposing the death penalty.' Roan v. State, 24 Ala. App. 517, 517, 137 So. 320, 321 (1931). A safe rule for a trial court to follow 'is to deny bail if the court could sustain a capital conviction by a jury based on the same evidence taken at the hearing seeking bail; and to allow bail if the evidence is not so efficacious.' Webb v. State, 35 Ala. App. 575, 576, 50 So. 2d 451, 452 (1951); Roddam v. State, 33 Ala. App. 356, 33 So. 2d 384 (1948)."

Ex parte Patel, 879 So. 2d at 533-34. This analysis explains how a court, if it is examining evidence alone, determines whether the State met its burden to show guilt. It is how a court determines whether it is "of the opinion, on the evidence adduced, that [the defendant] is guilty of the offense." § 15-13-3(a).

However, this analysis -- by its terms -- does not address what is done when the defendant is presumed guilty for purposes of bail. Proving that the offense was committed, proving that a jury would convict the defendant, and proving the defendant's guilt clearly put the burden on the State. But when the presumption rule applies, guilt is already presumed. Neither the caselaw discussed in Ex parte Patel nor § 15-13-

71

3(a) supplies an analysis to weigh the presumption of guilt against the evidence produced by a defendant. They instead contemplate an analysis based on evidence produced by the parties in the <u>absence</u> of a presumption, such as when bail is to be determined when no indictment exists. They do not apply in these cases.

Instead, as further explained in <u>Ex parte Patel</u>, there is a different analysis when an indictment creates a "presumption of guilt": "to be entitled to bail as of right, a defendant must <u>overcome this presumption</u> by proof." 879 So. 2d at 534 (emphasis added). In such a case, the burden is on the defendant to show that he or she is entitled to bail. <u>Ex parte Hall</u>, 844 So. 2d at 573 ("It is well established that a person accused by indictment of a capital offense must overcome the presumption of his guilt <u>by proof</u>, in order to be entitled to bail."). As this Court has most recently stated, "where one is imprisoned for a capital offense by virtue of an indictment he is presumed to be guilty <u>in the highest degree</u> and, to be entitled to bail as of right, must overcome this presumption by proof." <u>Ex parte Wilding</u>, 41 So. 3d at 78 (emphasis added). See also <u>Ex parte Landers</u>, 690 So. 2d at 538, and <u>Burks</u>, 600 So. 2d at 381.

The petitioners contend that they "rebutted any presumption of guilt." Petitions, p. 29. They point to testimony in the trial court indicating that E.E., the victim, suffered from severe medical conditions and required sophisticated care to ensure that he was adequately fed. The implication of the argument is that E.E. died of natural causes or, that owing to the difficulty of his care, the petitioners were simply not able to properly provide the level of care that E.E. needed. Thus, according to the petitioners, there was no intent on their part to cause his death and they disproved the intent necessary for a conviction of capital murder.

The State, on the other hand, points to testimony indicating that the petitioners wished to adopt E.E. but that, after it was suspected that he had intellectual disabilities, the petitioners failed to take E.E. to medical appointments and his weight suddenly declined, implying that the petitioners no longer desired E.E. and left him to die without proper intervention.

"'[W]here bail has been refused by the primary magistrate on oral evidence, the appellate court will not interfere, unless such denial

73

appears from the record to have been manifestly erroneous.'"  Ex parte

Patel, 879 So. 2d at 534 (citation omitted).

> "'When evidence is presented ore tenus to the trial court, the court's findings of fact based on that evidence are presumed to be correct,' Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994); '[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,' Bradley v. State, 494 So. 2d 750, 761 (Ala. Crim. App. 1985), aff'd, 494 So. 2d 772 (Ala. 1986); and we make '"all the reasonable inferences and credibility choices supportive of the decision of the trial court."' Kennedy v. State, 640 So. 2d 22, 26 (Ala. Crim. App. 1993), quoting Bradley, 494 So. 2d at 761. '"'Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'"' Ex parte Jackson, 886 So. 2d [155,] 159 [(Ala. 2004)], quoting State v. Hill, 690 So. 2d 1201, 1203 (Ala. 1996), quoting in turn Ex parte Agee, 669 So. 2d 102, 104 (Ala. 1995)."

Washington v. State, 922 So. 2d 145, 157-58 (Ala. Crim. App. 2005).

As the main opinion notes, the trial court was in the best position

to evaluate the oral testimony, it was free to reject testimony that it

believed was uncredible, and it drew the inferences necessary to support

its decision that "the presumption has not been overcome."  Given that

the petitioners are "presumed to be guilty in the highest degree" for

purposes of bail, Ex parte Wilding, 41 So. 3d at 75; that there was

evidence supporting the State's theory; and that the trial court could have disbelieved any testimony in favor of the defense, I do not believe that the petitioners overcame the presumption "by proof." Id. I thus cannot hold that the trial court erred. See Ex parte Landers, 690 So. 2d at 539 ("'In view of the presumption created by the indictment, and the further presumption to be accorded the conclusion of the trial judge who saw and heard the witnesses, we are unwilling to disturb [the trial court's denial of bail].'" (quoting Holmes v. State, 39 Ala. App. 422, 422, 102 So. 2d 673, 673 (1958))).

Bryan and Mendheim, JJ., concur.

COOK, Justice (concurring in part and dissenting in part).

I agree with the main opinion that when a defendant has been indicted for capital murder by a grand jury, the indictment creates a "presumption of guilt" for the purposes of a bail hearing. The main opinion provides an exhaustive analysis on this issue, which I find convincing. Therefore, I see no reason to grant the petitioners relief on this first issue and, thus, concur with that portion of the main opinion.

The petitioners also raise a second issue. They contend that, "[i]f this Court holds [that] a capital murder indictment creates a presumption of guilt, [they] rebutted it and [were] entitled to bond ...." Petitioners, p. 29. In denying the petitioners' relief on this second issue, the main opinion defers to the Blount Circuit Court's conclusions below, writing that the trial court was "free to <u>conclude</u> that their testimony was <u>not sufficient to overcome the presumption of guilt</u>." ____ So. 3d at ____ (emphasis added).

But the trial court did not decide whether the petitioners were (or were not) "<u>guilty</u>," and, therefore, it logically could not have decided if the "presumption of <u>guilt</u>" had been overcome in these cases. Section 15-13-3(a), Ala. Code 1975, governs whether a defendant is "eligible for bail"

when charged with capital murder. That statute requires a trial court to determine if it is "<u>of the opinion</u>, on the evidence adduced, that [the defendant] is <u>guilty</u> of the offense." But the trial court did not make this determination or even attempt to do so in these cases.

How do I know that the trial court did not make this determination here? Because the trial court explained in its orders the sole basis of its decision to deny bail in these cases. It wrote: "<u>The question</u> before the court as it relates to <u>the presumption is not one of 'will' the [petitioners] be convicted but 'could' the [petitioners] be convicted</u>. And if a jury did reach a verdict of guilty <u>could that verdict be maintained</u> based on the evidence presented." (Emphasis added.)

Neither of these questions asks whether the defendant is actually "guilty." They are, instead, a judgment about whether a future, hypothetical jury "could" convict a defendant of capital murder and whether a future, hypothetical jury verdict "could" be "maintained." Thus, they have nothing to do with whether the "presumption of guilt" has been overcome. In my view, these questions go to the issue of legal sufficiency of a future, hypothetical jury verdict.

The petitioners not only have specifically argued before this Court

77

that they overcame the "presumption of guilt," but also have pointed to a multitude of evidence that they presented during their bail hearings below. Among many things, the petitioners introduced the testimony of more than one <u>State</u> official, including the State's medical examiner, who found that the manner of E.E.'s death was "<u>undetermined</u>" and that E.E.'s cause of death was "<u>complications of malnutrition due to multiple genetic abnormalities</u>." (Emphasis added.)

In opposition, the State presented <u>no witnesses</u> and introduced <u>no evidence</u>.

It was the trial court's responsibility to make a guilt determination, for purposes of bail, based upon this factual record, and it has not done so. Because it is not the role of our Court to make the initial factual finding about guilt -- especially because we were not in the position of the trial court to hear the evidence live -- I believe that we should grant the petitions for the writ of habeas corpus in part and direct the trial court to determine if, based on the "evidence adduced," the presumption of guilt created by the indictments has been overcome in these cases. It is for this reason that I respectfully dissent from Part IV of the main opinion.

<u>I. The Presumption Rule Should Be Retained</u>

The parties vigorously dispute whether the presumption rule is consistent with § 15-13-3(a) and, thus, whether the long list of decisions from our Court applying this presumption rule should now be overturned. In my view, this is a close question. On the one hand, I have difficulty finding textual support in § 15-13-3(a) for this presumption rule. In fact, none of the parties or the amici curiae have cited any prior caselaw that even attempts to explain how the text of § 15-13-3(a) supports this presumption rule. Even the main opinion acknowledges that there are strong reasons to doubt the correctness of the legal reasoning that gave birth to the presumption rule.

On the other hand, in Ex parte City of Orange Beach, [Ms. SC-2024-0526, Apr. 4, 2025] ____ So. 3d ____, ____ (Ala. 2025), our Court explained that, when we are asked to overrule precedent that was allegedly decided incorrectly, two "competing interests" come into play: (1) this Court's "duty to correct its prior mistakes" and (2) the doctrine of stare decisis, "which [compels] respect for prior precedent, even prior precedent that was decided incorrectly, so as to provide stability in the law." We also explained that "'[o]verruling precedent is never a small matter' ... even though that precedent might be clearly wrong." Id. at ____ (quoting

79

Kimble v. Marvel Ent., LLC, 576 U.S. 446, 455 (2015)). Our Court emphasized, however, that "[t]he argument for adhering to the doctrine of stare decisis is particularly strong when we are asked to overrule a prior decision that … is allegedly in direct conflict with a statute." Id. at ____. I concurred in Ex parte City of Orange Beach and still agree with this reasoning.

As explained thoroughly in the main opinion, it has been 150 years since the birth of the presumption rule and more than 50 years since any contrary caselaw has been issued by either our Court or the Court of Criminal Appeals. And, as noted in the main opinion, the list of such caselaw is very long.

Additionally, as noted in the main opinion, there is reason to believe that the Legislature has acquiesced to the presumption rule. The Legislature has never made a material change to the language in § 15-13-3(a) despite 150 years of caselaw reaffirming the presumption rule.

For instance, when the Legislature passed "Aniah's Law" in 2021, it modified subsection (a) of § 15-13-3 to bring it in alignment with current Criminal Code references but kept the same standard that had been in place in the predecessor versions of that statute for capital cases.

See Act No. 2021-267, Ala. Acts 2021. The Legislature also changed subsection (b) of that statute. Id. By doing both of those things, the Legislature arguably acquiesced to our existing caselaw applying the presumption rule to bail hearings governed by that statute. In my view, this change made the presumption stronger because the amendment further restricted -- rather than increased -- the opportunity for bail for defendants, adding 12 noncapital offenses under § 15-13-3(b) for which bail may also be denied.

Perhaps most tellingly, in conjunction with passing Aniah's Law, the Legislature went further and amended Article I, Section 16, of the Alabama Constitution, to expressly remove the right to bail for defendants charged with capital murder from the Constitution:

| Prior Version of Art. I, § 16, Ala. Const. of 1901 | Amended Version of Art. I, § 16, Ala. Const. of 2022 |
| --- | --- |
| "That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great; and that excessive bail shall not in any case be required." (Emphasis added.) | "That all persons shall, before conviction, be bailable by sufficient sureties, unless charged with capital murder, as provided in Section 13A-5-40, Code of Alabama 1975, as amended." (Emphasis added.) |

It is worth noting that the Legislature unanimously passed this amendment to Section 16 and then 80% of Alabama voters approved this

81

change. As the Alabama District Attorneys Association ("ADAA")

explains in its amicus brief:

> "The Alabama Constitution was recompiled and approved by the voters in 2022. Crucial to the case at bar, a proposed amendment to Article I, section 16, was also on the ballot in November 2022, Alabama Constitutional Amendment No. 981 as proposed in Alabama Act 2021-201. Alabama Act 2021-201 was overwhelmingly and unanimously approved and passed by the Alabama Legislature during the 2021 Regular Legislative Session as part of Aniah's Law. See Amicus ADAA Attach. A at 6. The citizens of Alabama likewise overwhelmingly approved this amendment by a margin of just over sixty percentage points, with 1,020,464 yes votes and only 247,554 no votes or approximately 80.4% for and approximately 19.5% against. See Gov. Kay Ivey, Proclamation Declaring the November 8, 2022, Election Results are on Record with the Secretary of State (Nov. 28, 2022), attached hereto as Amicus ADAA Attach. B at 2. Thus, Article I, section 16 was amended to read, in pertinent part, 'That all persons shall, before conviction, be bailable by sufficient sureties, <u>unless charged with capital murder, as provided in Section 13A-5-40</u>, Code of Alabama, as amended.' Art. I, § 16, Ala. Const. of 2022 (emphasis added). The amendment became effective on January 1, 2023, approximately eleven months prior to E.E.'s death on November 22, 2023. As such, the 2022 version of Article I, section 16, as amended, controls these proceedings."

ADAA's amicus brief at 13-14 (emphasis in original).

These are extraordinary margins of approval, and this

constitutional amendment is a significant change. However, the

petitioners fail to recognize or address any of this, citing instead the

preamendment language of Section 16 in support of their arguments against the presumption rule.

It is of course true that the statute could go further than the Constitution's protection, but the timeline here is telling. By amending the Constitution, the Legislature and the Citizens of Alabama expressly considered the question of bail standards for capital murder. Why would anyone take affirmative action to <u>restrict</u> bail for capital murder by amending the Constitution (which is no small task) if they believed that the existing statute governing bail for capital murder was <u>already too strict</u>? No party or amici has even suggested an explanation, and neither can I. Indeed, it is difficult to imagine a stronger argument for legislative acquiescence than such a specific Constitutional change restricting bail for capital murder with unanimous approval by the Legislature and approval by 80% of Alabama voters.[12]

---

[12]None of the parties or amici have cited caselaw concerning legislative acquiescence to a statutory construction when there has been a <u>later</u> Constitutional change in the <u>same direction</u> as the allegedly improper statutory construction, and I have not located any such caselaw. In other words, it is argued here that the "presumption of guilt" statutory caselaw is stricter in regard to granting bail than is the text of the statute -- and yet the Legislature and the citizens of Alabama passed a constitutional amendment restricting bail <u>even further</u> than this allegedly flawed caselaw.

In my view, such overwhelming votes together with 150 years of precedent compel us to adhere to stare decisis in this case and to retain the presumption rule. "'[C]ritics of our ruling can take their objections across the street,' i.e., to the Alabama Legislature, which can 'correct any mistake it sees.'" Ex parte City of Orange Beach, ___ So. 3d at ___ (quoting Kimble, 576 U.S. at 456). I believe that a contrary holding by our Court in these cases would shock the Legislature and the citizens of Alabama. Because it is normally our role to provide predictability in the law, I concur with the main opinion that the presumption rule should be retained and that the petitioners are not entitled to relief on that issue.[13]

### II. Because The Trial Court Did Not Determine Guilt in These Cases, Its Findings Below Cannot Form a Basis for Denying the Petitions Before Us

---

[13]In concurring with this part of the main opinion in these cases, I do not wish to be understood as saying that incorrect, prior precedent based on a statutory interpretation can never be reexamined or overruled. Our Court has previously stated that stare decisis is not an "inexorable command." State v. Grant, 378 So. 3d 576, 583 (Ala. 2022). However, it is not necessary for us to determine the exact boundary of stare decisis to determine the outcome of the present cases. See generally Gamble v. United States, 587 U.S. 678, 711-12 (2019) (Thomas, J., concurring) (arguing that stare decisis should not apply if the precedent is "demonstrably erroneous"); Bryan A. Garner et al., The Law of Judicial Precedent at 333-45 (Thomson Reuters 2016); id. at 346-351 (noting that reenactment creates a "presumption" that "can be overcome"); id. at 396-410 (listing factors to consider for and against overruling precedent).

As explained above, the trial court did not make any determination about "guilt" in these cases but instead based its determination on whether the petitioners "'could' … be convicted" by a jury of capital murder and whether such convictions "could be sustained." In its orders, the trial court stated:

> "The question before the court as it relates to the presumption is not one of 'will' the defendant be convicted but 'could' the defendant be convicted. And if a jury did reach a verdict of guilty could that verdict be maintained based on the evidence presented. If the answer to the foregoing question is YES then the defendant is not entitled to bond[;] if the answer is NO then bond should be granted.
>
>> "'A safe rule for a trial court to follow "is to deny bail if the court could sustain a capital conviction by a jury based on the same evidence taken at the hearing seeking bail; and to allow bail if the evidence is not so efficacious." Webb v. State, 35 Ala. App. 575, 576, 50 So. 2d 451, 452 (1951); Roddam v. State, 33 Ala. App. 356, 33 So. 2d 384 (1948).'
>
> "In this case it is clear the defendant has the burden to overcome the presumption for purposes of establishing bond because [he/]she is charged by way of an indictment for an offense covered by 15-13-3(a). Based on the evidence presented in the hearing the court is of the opinion that conviction by a jury could be sustained and the presumption has not been overcome. Therefore, the defendant's request for bail is hereby DENIED. Defendant shall remain in custody pending further disposition of this matter."

(Capitalization in original; some emphasis added; some emphasis

omitted.)

To emphasize the point, the trial court made clear that there was no basis for its ruling other than the answer to these "could" questions, writing: "If the answer to the foregoing question is YES then the defendant is not entitled to bond; if the answer is NO then bond should be granted." (Emphasis added; capitalization in original.)

Section 15-13-3(a) states:

"A defendant is not eligible for bail when he or she is charged with capital murder pursuant to Section 13A-5-40, [Ala. Code 1975,] if the court is of the opinion, on the evidence adduced, that he or she is guilty of the offense."

(Emphasis added.) In other words, in order to deny bail, (1) the "court" -- not the grand jury or a jury -- must (2) reach the "opinion" (3) that the defendant "is guilty" and (4) this opinion must be based upon "the evidence adduced."[14] None of this occurred in these cases, and it is not a

---

[14]In his special writing, Justice Shaw takes the position that § 15-13-3(a) does "not apply in these cases" because there are indictments. ____ So. 3d at ____ (emphasis added). In support of his position, Justice Shaw cites to Ex parte Hall, 844 So. 2d 571 (Ala. 2002), Ex parte Patel, 879 So. 2d 532 (Ala. 2003), and Ex parte Wilding, 41 So. 3d 75 (Ala. 2009). However, none of those cases state that this statute does not apply to bail hearings when there is an indictment that creates a "presumption of guilt." I also have found no other caselaw stating that § 15-13-3(a) does not apply to bail hearings if there has been an indictment. And most importantly, the plain language of § 15-13-3(a) indicates that it applies

close call.

In his special concurrence, Justice McCool -- the author of the main opinion -- agrees with my reading of the trial court's orders, writing that the circuit court "did not apply the correct standard when making the bail determinations in these cases ...." ___ So. 3d at ___ (McCool, J., concurring specially) (emphasis added). He explains that the trial court was mistaken because "concluding that the evidence is sufficient to sustain a capital-murder conviction returned by a jury is not the same as

_____

to any bail proceeding wherein a defendant who has been charged with capital murder is requesting bail.

Neither the State nor any amicus makes the argument that Justice Shaw is making. Rather, they argue the opposite and recognize the connection between the "presumption of guilt" and the requirement to determine guilt in § 15-13-3(a). See, e.g., Alabama Attorney General's brief at 32 ("[T]he 'evidence' just means the indictment and whatever the defendant may bring to overcome it. In fact, the plain text does not require anything of the State, let alone a full-blown mini-trial. The provision instructs only that 'the court' form 'an opinion on the evidence adduced' as to the defendant's guilt. Ala. Code 15-13-3(a)." (emphasis on "anything" original; other emphasis added)); ADAA's brief at 29-30 ("As with all presumptions, it can be overcome by evidence presented to the trial court, which has the authority to grant bond unless 'the court is of the opinion, on the evidence adduced, that he or she is guilty of the offense,' pursuant to section 15-13-3(a)." (emphasis added)); Blount County District Attorney's brief at 4 ("The trail [sic] court was satisfied that Grimes did not overcome the presumption of guilt created by §15-13-3(a)." (emphasis added)).

forming a <u>personal opinion</u> that the defendant is guilty of capital murder, which is what § 15-13-3(a) requires." <u>Id.</u> at ____. He also explains that "[t]he former is simply a burden of <u>production</u>, whereas the latter is a burden of <u>persuasion</u>." <u>Id.</u> at ____.[15]

---

[15]I note that this "could" standard is flawed for yet another reason. The trial court cites and purports to quote the following excerpt from our Court's decision in <u>Webb v. State</u>, 35 Ala. App. 575, 576, 50 So. 2d 451, 452 (1951), for this "could" standard: " 'By a long line of authorities it has been held that a safe rule to follow is to deny bail if the court <u>could</u> sustain a capital conviction by a jury based on the same evidence taken at the hearing seeking bail; and to allow bail if the evidence is not so efficacious.' " (quoting of <u>Turner v. State</u>, 32 Ala. App. 465, 466, 27 So. 2d 239, 240 (1946)) (emphasis added).

However, this is a misquotation. The <u>Webb</u> decision actually uses the word "<u>would</u>" not "<u>could</u>" in this quotation. This is a significant difference. "[T]he term 'would' is the past tense of 'will'" and "the words 'would' and 'will' represent certainty, where 'could' and 'can' represent possibility." <u>Cyrus v. University of Toledo</u>, No. 20-3913, Apr. 1, 2022 (6th Cir. 2022) (Nalbandian, J., dissenting) (not reported in Federal Reporter); <u>see</u> <u>also</u> <u>Usery v. Hermitage Concrete Pipe Co.</u>, 584 F.2d 127, 131 (6th Cir. 1978) ("[T]he term 'would' in place of 'could,' appears rather clearly to have required a greater degree of certainty. The distinction is not merely one of semantics."); <u>Kentucky Res. Council, Inc. v. EPA</u>, 467 F.3d 986, 994 (6th Cir. 2006) (rejecting a reading of a statute that "would substitute 'could' for 'would'"). In defense of the trial court, its misquotation of <u>Webb</u> may be because our Court misquoted <u>Webb</u> in <u>Ex parte Patel</u>, 879 So. 2d 532, 533 (Ala. 2003). The misquote in <u>Patel</u> was repeated in <u>Ex Parte Wilding</u>, 41 So. 3d 75 (Ala. 2009).

Repeating a clerical mistake is certainly not enough reason to follow earlier caselaw, especially when (as here) such caselaw is irreconcilable with the plain language of § 15-13-3(a).

Despite this acknowledgement, Justice McCool concludes that this error does not provide a basis for granting the petitioners relief "because that is not the argument they have made." Id. at ____. Instead, Justice McCool notes, "the petitioners have argued only (1) that the presumption rule should be abolished and (2) that, if the presumption rule remains in place, they presented sufficient evidence to overcome the presumption." Id. at ____ (emphasis added).

I respectfully disagree with Justice McCool's conclusion. As explained above, the trial court logically could not have determined whether the evidence was sufficient to overcome the presumption of guilt in these cases because the trial court stated that it was instead basing its decision on whether a hypothetical future jury "could" reach a guilty verdict and whether such a hypothetical verdict "could" be sustained. As explained above, in order to grant or deny a defendant's request for bail, the trial court must determine guilt based upon the admitted evidence.

Justice McCool argues that the trial court did determine that the presumption of guilt had not been overcome in these cases, noting that the trial court mentioned both (1) the "presumption of guilt" and (2) that the petitioners had the burden of overcoming that presumption four

89

different times in its orders.

But the only statement in the trial court's orders with any such <u>finding</u> is a conclusory declaration that "[b]ased on the evidence presented in the hearing the court is of the opinion that conviction by a jury could be sustained and the presumption has not been overcome." And if it was not clear enough from this sentence that the trial court had not determined <u>guilt</u>, the remainder of its orders is clear that its decision is based entirely upon a different question: "If the answer to the foregoing question [could the defendant be convicted and could the conviction be sustained] is YES then the defendant is not entitled to bond[;] if the answer is NO then bond should be granted." (Capitalization in original.)

I recognize Justice McCool's point that the petitioners could have made a more specific argument on this issue; however, their second argument is that they have overcome the presumption of guilt. It is not possible for this Court to determine whether their second argument is correct without first considering whether the trial court made a determination of guilt. They are inexorably intertwined. In fact, in my view, the question whether the presumption of guilt has been overcome is essentially the same question as whether the trial court is of the

90

opinion that the defendant is guilty based upon the adduced evidence. As explained above, the trial court did not reach such a conclusion in these cases.[16]

The trial court's failure to decide guilt in these cases was a significant legal error that is completely irreconcilable with the presumption that we reaffirm today and the requirements in § 15-13-3(a).

### III. Whether the Trial Court's Error in These Cases is Harmless

I do not believe the trial court's error in these cases is harmless. In the typical case in which there has been an indictment by a grand jury for capital murder, a reader might think that the failure by the trial court to apply the correct legal standard for bail might be harmless error. Perhaps there was a shooting or a knife attack or other types of violence; perhaps there was supporting video or corroborating witness statements.

But the cases before our Court today are not the typical capital-

---

[16]As I understand our writings, Justice McCool and I appear to agree on the two key points here: (1) the trial court must, applying a presumption of guilt, reach an "opinion" that the defendant is guilty based on the evidence adduced at a bail hearing and (2) the trial court did not do so here. Thus, our disagreement is narrow: Should we require the judge to apply the correct rule at this point? But even under the main opinion's resolution of this issue in these cases, the petitioners should be able to raise this issue in the trial court by making a new motion for bail and asking for the trial court to apply this correct legal standard.

murder cases. In fact, they are highly unusual. The petitioners were foster parents. The victim was a special-needs infant who died not from violence but, allegedly, from malnutrition when his feeding tube became dislodged. As Mason John Grimes explains in his petition:

> "If this Court rejects Mr. Grimes' position that his indictment created no presumption of guilt, he is still entitled to bond because he fully rebutted any presumption of guilt on capital murder through multiple witnesses and exhibits that established the total lack of any particularized intent to kill. See Brown v. State, 72 So. 3d 712, 715 (Ala. Crim. App. 2010) (outlining the particularized intent to kill requirement to sustain a capital murder conviction). Even the state's medical examiner, who the defense called, definitively ruled out any intent to kill both in her peer-reviewed report and testimony.
>
> "....
>
> "The State called no witnesses. …
>
> "The question at the bond hearing was whether E.E.'s death was a product of a particularized intent to kill a child that the Grimes family intended to nurture then adopt. It defies all common sense that [the petitioners] would intend to kill E.E., a child that the family nurtured and planned to adopt. In fact, the defense put on voluminous testimony to show no particularized intent to kill. The State responded with nothing except to establish that while Ms. Grimes was the primary caregiver, Mr. Grimes signed DHR documents thus imputing some responsibility to him for E.E.'s care as a foster parent. [Attachment I] at 221-23. And it was undisputed that if E.E.'s medical needs overwhelmed the family, DHR would relieve the family of their foster care responsibilities. Id. at 53.
>
> "The court heard from DHR workers who monitored the

92

Grimes family. This included testimony about E.E.'s failure to thrive and his intensive medical needs, including extreme difficulty with gaining weight and use of a non-permanent feeding tube. Attachment I at 19-20, 23, 30, 41, 44, 78, 80, 86-87. There were no signs or reports of neglect from any medical professional, DHR worker, mandated reporter, or anyone else despite constant DHR home visits and E.E.'s numerous medical appointments and hospitalizations. Id. at 31, 35, 42, 44, 70, 90.

"The defense established that because of multiple medical and genetic conditions, there existed a high probability that E.E. would pass away within the foreseeable future. Id. at 93-94, 182. This included testimony drawn from a DHR worker's experience and especially from Dr. Coghill. Id.

"....

"The medical examiner's testimony, presented by the defense, painted a comprehensive picture of her review of E.E.'s medical records and other source material over a 7-month period, as well as an extensive peer review, while Dr. Malone worked to complete E.E.'s autopsy report. Attachment I at 108, 113-17. The report's conclusion was that E.E.'s manner of death was 'undetermined,' and his cause of death was 'complications of malnutrition due to multiple genetic abnormalities.' Id. at 108. In her extensive review, Dr. Malone saw nothing to indicate any intentional harmful action by Mr. or Ms. Grimes. Id. at 161.

"Perhaps the most convincing indication of a total and utter lack of any specific intent to kill E.E. (or to harm him in any way) came from Dr. Coghill. He described the extremely dire medical situation that E.E. faced. Id. at 178, 182. This included the near impossible feat of keeping E.E.'s feeding tube in place in a non-hospitalized setting. Id. at 183, 184, 186. A feat that he believed even two trained physicians living close to a hospital would struggle to meet. Id. at 212. And it

would not be obvious to caregivers if E.E.'s tube stopped properly providing nutrition. <u>Id.</u> at 186-88. Dr. Coghill also opined on the medical community's failure to support E.E. and the Grimes family as they navigated E.E.'s persistent health concerns. <u>Id.</u> at 184-85, 192. He specifically noted that he had never discharged a child in E.E.'s circumstances without home hospice care, noting the unimaginable that the Grimes family had no offer of specialized home medical care. <u>Id.</u> at 190, 191, 211."

Mason John Grimes's petition at 29-33 (emphasis added). Brooklyn Paige Grimes raises nearly identical assertions in her petition. <u>See</u> Brooklyn Paige Grimes's petition at 29-34.

The main opinion does not engage with this evidence.[17] Instead, it indicates that we should defer to the conclusions of the trial court in denying the petitioners' requests for bail. But, as explained above, the trial court never determined guilt.

In order to decide the second issue raised by the petitioners -- that

---

[17]The main opinion states that cross-examination can provide the basis for the trial judge to disbelieve testimony provided by the petitioners. As a general principle, this is correct. But a good deal of the evidence submitted by the petitioners was undisputed, and large parts of the testimony were not the subject of actual dispute by the State. Further, the main witnesses presented by the petitioners were <u>State</u> employees. More importantly, the trial court did <u>not</u> decide whether it disbelieved the testimony presented regarding guilt because it did not decide whether it was of the opinion that the petitioners were guilty. Nor did the trial court state that it disbelieved any testimony or evidence.

is, whether they "presented evidence sufficient to overcome the presumption" -- I believe that we should grant the petitions for the writ of habeas corpus in part and direct the trial court to determine if, based on the "evidence adduced," the presumption of guilt created by the indictments has been overcome in these cases, as required by § 15-13-3(a). It is for this reason that I respectfully dissent from Part IV of the main opinion.[18]

IV. Conclusion

In sum, I concur with the main opinion that the presumption rule should be retained. Although I have real doubts about the textual support for this presumption, it has been reaffirmed by our Court for more than 150 years. Additionally, the evidence of legislative acquiescence to this rule is especially strong given the overwhelming votes by both the

___

[18]The main opinion notes that bail might have been denied in these cases under other portions of the statute for other charged crimes. See ____ So. 3d at ____ n.8 ("We note here that bail potentially could have been denied in these cases under § 15-13-3(b)(1)a. or § 15-13-3(b)(1)l. because the petitioners are also charged with intentional murder and aggravated child abuse."). But, as the main opinion correctly notes, the State relied entirely upon the capital-murder charges in opposing the requests for bail. Moreover, any decision on bail under these other provisions would have been pursuant to different, more liberal standards that were neither advocated by the State nor considered by the trial court.

Legislature and Alabama voters to amend the Constitution to narrow the right to bail for capital-murder defendants.

However, because the materials before us indicate that the trial court never determined whether it was "of the opinion," based on the "evidence adduced," that the petitioners were "guilty" before denying their requests for bail, I believe that we should grant the petitions for the writ of habeas corpus in part and direct the trial court to determine if, based on the "evidence adduced," the presumption of guilt created by the indictments has been overcome in these cases. Words matter, and it is our role to apply the text of the laws as passed by the Legislature.[19]

I acknowledge that even if we were to do as I suggest, the trial court might still deny the petitioners' requests for bail. The facts presented by these cases are complicated and tragic, and it is not my place to make

---

[19]I take no position on whether the standard applied by the trial court -- that is, whether a defendant is not entitled to bail because he or she "'could' … be convicted" by a jury of capital murder and whether such a conviction "could be sustained" -- is good public policy for a bail determination in a capital-murder case. There are public-policy arguments that can be made for such a standard. But as these cases amply demonstrate, not every capital-murder case is the same. It is not my role to decide which standard would be best for Alabama. That is the role of our elected representatives in the Legislature. My role is to enforce the text of the laws they pass, and the "could" standard is certainly not in the text of the law that they have passed.

that decision. I did not hear the testimony, and I do not know what other evidence the State might yet introduce. Regardless of the outcome, these cases are heartbreaking and should be a reason for all of us to say an extra prayer tonight for the children in foster care across our State and for the Alabamians who are weighing whether they should become foster parents.

SELLERS, Justice (dissenting).

I respectfully dissent. I would grant the petitions for the writ of habeas corpus, compelling the Blount Circuit Court to set aside its orders denying bail with instructions to set a reasonable bail without applying a presumption of guilt based on the indictments. I would further direct the circuit court to reconsider the evidence that was presented at the bail hearings, without applying a presumption of guilt based on the indictments, and, then, only if the court is of the opinion that Mason John Grimes and Brooklyn Paige Grimes are guilty of capital murder, should it deny bail. § 15-13-3(a), Ala. Code 1975. The burden of proof is on the State to convince the court to form an opinion of guilt based on evidence beyond merely the indictments.